## PALMER v. NOE.

No. 4539.    Opinion Filed June 29, 1915.

(150 Pac. 462.)

1. **BILLS AND NOTES—Evidence—Pleadings and Proof—Contracts—What Law Governs.** A promissory note, dated, executed, and delivered at Salem, Ark., and payable in that state, in the absence of other proof, is an Arkansas contract, and is governed by the laws of Arkansas; but, in an action upon the same in this state, where the laws of Arkansas are not pleaded or proven, the presumption is that the laws of Arkansas are the same as the laws of this state.

2. **PRINCIPAL AND SURETY—Release of Surety—Parties.** Under section 4694, Rev. Laws 1910, the payee of a promissory note may, at his option, sue one of the sureties, without joining the maker and the other sureties as parties defendant; and his failure to sue the maker and other sureties does not operate as a release of the surety sued.

3. **SAME—Failure to Sue Principal.** The failure of the payee of a promissory note to sue the principal, upon the oral request of the surety sued, made long after the maturity of the note to the attorney of the payee, who had the note for collection, does not operate as a release of the surety sued, even though the principal, at the time the request was made, was solvent and amply able to

pay the note, and, in the meantime, he and the other sureties thereon became insolvent, it being the duty of the surety upon the failure of the principal to pay the note when due, to pay the same and pursue his remedy against the principal and his cosureties.

(Syllabus by Dudley, C.)

*Error from District Court, Seminole County;* Tom D. McKeown, *Judge.*

Action by S. F. Palmer against T. D. Noe. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

*J. W. Willmott,* for plaintiff in error.

*Crump, Fowler & Skinner,* for defendant in error.

Opinion by DUDLEY, C. On April 4, 1911, the plaintiff in error, plaintiff below, as payee, commenced this action in the district court of Seminole county, against the defendant in error, defendant below, to recover the amount claimed to be due upon a promissory note of $300, dated at Salem, Ark., October 16, 1905, due and payable to the order of the plaintiff one year thereafter, bearing interest at 10 per cent. from date until paid, signed by Fred Basham, as principal, and C. E. Kay, J. A. Cunningham, A. F. Basham, Geo. D. Robins, and the defendant in error, as sureties. The issues were joined, and thereafter and in April, 1912, the case was tried to the court and jury, resulting in a judgment in favor of the defendant, from which the plaintiff has perfected an appeal.

The facts applicable to the questions presented, in substance, are: The note in controversy was executed and delivered at Salem, Ark. Fred Bahsam was the principal on the note, and the other signers thereof, including the defendant, were sureties. The payee and payors of

said note resided at or near Salem, Ark., at the time the note was executed and delivered. Shortly after the maturity of the note, the principal maker thereof paid $30, being the past-due interest thereon, and this payment is indorsed on the note. In November, 1906, the defendant removed from Arkansas to the Indian Territory, and located in what is now Seminole county, Okla., where he has ever since resided. The principal and the other sureties have continuously resided in Arkansas since the execution of the note. At the time the suit was brought, and for some time prior thereto, the plaintiff resided at Springfield, Mo. At the time this suit was brought, the plaintiff had not sued the principal nor any of the other sureties on said note. The execution and delivery of the note is admitted. In March, 1910, the defendant was in Salem, Ark., and while there an attorney presented the note in controversy to him for payment, but he declined to pay the same, and orally requested the attorney to sue the principal and the sureties thereon, including himself, in Arkansas, and advised him that he would have his attorney, naming him, file an answer for him. The attorney declined to bring the suit, claiming that the principal maker was insolvent. The only defense interposed by the defendant is the failure of the plaintiff to institute suit upon said note in 1910, as requested, claiming that at that time and for some time prior thereto the principal maker of said note was solvent and amply able to pay the same, but that since that time he became inslovent, and by reason of the failure of the plaintiff to sue the principal maker of said note, and especially to comply with his request in 1910, the principal maker thereof and the other sureties having, in the meantime, become insolvent, and the action, as a matter of fact, being barred as

against them, he is discharged as surety. The only evidence upon the question of the request to bring the suit is the testimony of the defendant, which is as follows:

"I will ask you if you know Lemon Kay. A. I do. Q. I will ask you to state if he is a licensed attorney, practicing law at Salem, Ark. A. Yes, sir. Q. I will ask you to state who had the note. Do you know where the note was last March, two years ago? A. Yes, sir; that was the first time I had seen it since I signed it. Q. Who had it in his possession? A. Mr. Kay. Q. Where? A. Salem, Ark. Q. Did you see the note at that time? A. Yes, sir; I saw him [referring to Kay, the attorney] on the streets, and he called me in his office and asked me if I remembered signing it, and of course I knew my signature and told him that I did. Q. At that time what did he say to you about the payment of the note, if anything? A. Said Mr. Palmer sent it down there to him for collection. Q. What did you tell him? A. I told him I wanted him to sue Mr. Basham, the principal on this note. Q. You told him to sue Mr. Basham? A. Yes, sir. Q. What did he say? A. He said it would not be worth while to sue Fred at this time. Q. What did you say? A. I told him I wanted him to sue on it. If I had to pay it I wanted to know it. Q. Where did you tell him you wanted him to sue you? A. In Arkansas, and I went and saw an attorney. Q. What attorney did you consult? A. Mr. Short. Q. Well, then, after the conversation with Mr. Kay regarding the note, in which you told him you wanted him to sue the principal on the note, then did you have a conversation with him a little later? A. Yes, sir. I told him Mr. Short would look after my interests."

The defendant in his answer alleged that at the time the note matured he requested the plaintiff to sue upon it, but there is no testimony at all in the record with reference to this. The jury found for the defendant, and it follows, of course, that the request to bring the suit was made in 1910, and that at that time the principal maker

was solvent and amply able to pay the note, and that since that time he has become insolvent. The question, therefore, for determination is whether or not the defense. interposed was, as a matter of law, a defense.

The plaintiff insists that since the note was executed in Arkansas it is an Arkansas contract, and should be governed by the laws of that state. This is true, but the laws of Arkansas were not pleaded nor proven, and hence they are presumed to be the same as the laws of this state. *Steward v. Commonwealth National Bank,* 29 Okla. 754, 119 Pac. 216; *Dunbar v. Commercial Electrical Supply Co.,* 32 Okla. 634, 123 Pac. 417, and cases therein cited; *Atchison, Topeka & Santa Fe Ry. Co. v. Lambert,* 32 Okla. 665, 123 Pac. 428.

Under section 4694, Rev. Laws 1910, the plaintiff had a right to sue the defendant, without joining the original maker or the other sureties upon said note. *Francis v. First National Bank of Eufaula,* 40 Okla. 267, 138 Pac. 140; *Horne v. Oklahoma State Bank of Atoka,* 42 Okla. 37, 139 Pac. 992.

At the close of the testimony the plaintiff requested the court to instruct the jury to return a verdict in his favor. This the court declined to do, to which the plaintiff saved exceptions. The action of the court in this respect is assigned as error, and is properly presented for review. The note matured October 16, 1906. This suit was brought in April, 1911. Assuming that the laws of Arkansas are the same as ours, as to the statute of limitations upon a promissory note, this action was not barred, as against the principal maker and the other sureties, upon this note when the suit was brought. If the failure of the plaintiff to sue the principal, and especially his failure to do so in 1910, when requested by the defendant,

does not exonerate the defendant, then the requested instruction should have been given; otherwise not.

In Daniel on Negotiable Instruments (6th Ed.) vol. 2, sec. 1326, it is said:

"Mere delay and passivity of the creditor does not discharge a drawer or indorser, or other surety, even when the delay and subsequent insolvency of the principal deprives him of all means of reimbursement; and, unless authorized so to do by statute, he cannot, by request or notice, compel the creditor to sue the principal debtor."

This same rule is announced in 3 R. C. L., sec. 503, wherein it is said:

"The prevailing view is that in general, unless some agreement or special circumstance imposes diligence upon the holder as a duty, he does not, by mere failure to pursue the person primarily liable, discharge the guarantor, surety, or indorser, even though his passivity in this regard may result in barring the indorser's remedy against the ultimate debtor. So delay in enforcing a note against one maker has no effect to release a comaker, although he signed out of accommodation to the principal debtor. The remedy of the surety is to pay the debt himself to the holder, and then bring his action against the principal, if he fears loss from the insolvency of his principal. Furthermore, it is established by sound authority that a surety, when the debt becomes due, may come into a court of equity to compel the holder to sue for and collect the debt of the principal."

—and in section 504, further discussing this question, it is said:

"The weight of authority has taken the view that mere delay in proceeding against the maker or acceptor of a note or bill does not discharge an indorser or other party secondarily liable, even though he requests the holder to proceed, and the maker or acceptor afterwards

becomes insolvent. The party who is secondarily liable may perhaps resort to a court of equity to compel the institution of a suit against the party ultimately liable, subject to the restrictions which such a court would impose; but under the prevailing rule he is not, under any circumstances, entitled to direct or control the course of the creditor by a mere notice *in pais.*"

Numerous authorities are cited supporting the rule announced, some of which are *Darby v. Berney Nat. Bank.* 97 Ala. 643; 11 South. 881; *Wilson v. White,* 82 Ark. 407, 102 S. W. 201, 12 Ann. Cas. 378; *Carver v. Steele et al.,* 116 Cal. 116, 47 Pac. 1007, 58 Am. St. Rep. 156; *Rogers v. Detroit Savings Bank,* 146 Mich. 639, 110 N. W. 74, 18 L. R. A. (N. S.) 530, and note; *Diversy v. Moor,* 22 Ill. 330, 74 Am. Dec. 157; *Bradley v. Andrus,* 107 Fed. 196, 46 C. C. A. 238, 53 L. R. A. 432; *Petty v. Gacking,* 97 Ark. 217, 133 S. W. 832, 33 L. R. A. (N. S.) 175. This same rule was announced by this court in the case of *Linton v. Chestnutt-Gibbons Gro. Co.,* 30 Okla. 103, 118 Pac. 385, wherein it was held:

"Such surety is not entitled to notice of the default or insolvency of his principal; neither is he released by mere delay in bringing suit."

In the body of the opinion, it is said:

"Neither is notice necessary in the case of suretyship. It devolves upon the surety himself to know the defaults of his principal. The surety is usually bound with his principal in the same instrument, and is an insurer of the debt (citing cases). Being a surety upon this instrument and primarily liable for its payment, it did not devolve upon defendant in error to give notice, either of the non-payment or of the principal's insolvency. Neither will mere delay in bringing suit release the surety. *Friend v. Smith Gin Co.,* 59 Ark. 86, 26 S. W. 374. The surety may pay the debt at maturity, and then himself pursue the creditor's remedies against the principal."

This note sued upon is a joint and several obligation, and, as before stated, the payee may sue one surety, without joining the maker and the other sureties. *Outcalt v. Collier*, 8 Okla. 473, 58 Pac. 642; *McMaster v. City Natl. Bank of Lawton*, 23 Okla. 550, 101 Pac. 1103, 138 Am. St. Rep. 831; *Kirkpatrick v. Gray*, 43 Kan. 434, 23 Pac. 633; *Francis v. First Natl. Bank of Eufaula, supra.* Justice Kane, speaking for the court in the case last cited, cites the Kansas case and quotes approvingly the following therefrom:

"The holder of a promissory note may, at his option, bring and maintain an action against one who signed the same as surety only, and cannot be compelled to bring in the principal debtor as a party defendant in order to have it determined who is primarily liable on the note. * * *"

If the payee may sue the surety, without making the principal a party, and cannot be compelled to do so by the surety, it cannot be said that his failure to sue the principal would release the surety. Also, it seems equally clear that failure to sue the principal upon an oral request of the surety would not release the surety. The surety obligated himself to pay this debt at maturity, and upon the failure of the principal to do so, it was his duty to pay the obligation and pursue his remedy against the principal. Section 1061, Rev. Laws 1910. It is not claimed that there was any fraud or collusion between the payee and the principal, or the other sureties, to delay action, to the injury and detriment of the defendant; on the other hand, the record shows that the payee endeavored, from time to time, to collect this note from the principal. No action, however, was brought.

The Negotiable Instrument Act of this state became effective June 10, 1909, and in section 4049, Rev. Laws

1910, being a section of the Negotiable Instrument Act, it is provided:

"The provisions of this chapter do not apply to negotiable instruments made and delivered prior to the passage hereof."

The note sued upon was executed prior to the passage of this act, and therefore is not controlled by it. Section 1056, Rev. Laws 1910, provides when sureties may be exonerated, and this section is as follows:

"A surety is exonerated: First, in like manner with a guarantor. Second, to the extent to which he is prejudiced by any act of the creditor which would naturally prove injurious to the remedies of the surety or inconsistent with his rights, or which lessens his security; or, third, to the extent to which he is prejudiced by an omission of the creditor to do anything, when required by the surety, which it is his duty to do."

Section 1058, Rev. Laws 1910, provides that a surety may require the creditor to proceed against the principal, under certain conditions. This section is as follows:

"A surety may require his creditor to proceed against the principal, or to pursue any other remedy in his power which the surety cannot himself pursue, and which would lighten his burden; and if in such case the creditor neglects to do so, the surety is exonerated to the extent to which he is thereby prejudiced."

The defendant insists that under section 1058 and subdivisions 2 and 3 of section 1056, he is released from liability upon the note sued on, for the reason that the plaintiff failed to comply with the oral request made to his attorney to proceed against the principal and sureties upon said note at a time when the principal was solvent and amply able to pay the debtor, and that in the meantime the principal and the other sureties became insolv-

ent, and that his failure to so proceed prejudiced his rights and remedies against the principal and his cosureties. With this contention we cannot agree. It was not the duty of the plaintiff to sue the principal, and, not being his duty, his failure to do so was not prejudicial to the rights and remedies of the defendant. The defendant obligated himself to pay the debt, and, upon the failure of the principal to pay it, at maturity, it was his duty to pay it and proceed against the principal and his cosureties under section 1061, Rev. Laws 1910.

Plaintiff had the option to sue any or all of the makers of this note, and, having this option, his failure to comply with the oral request of the defendant would not operate as a release of liability. If, as a matter of fact, the principal and the other sureties thereon were solvent, it was the plain duty of the defendant to pay the obligation and proceed to protect himself under the statute. The action was not barred against any of the makers when this suit was brought, and the defendant's right to sue the principal and his cosureties does not accrue until he pays the note. We do not think these sections of our statute take this case out of the general rule hereinbefore stated. We therefore hold that the evidence is wholly insufficient to release the defendant, and that the requested instruction should have been given.

The judgment of the trial court is reversed and remanded.

By the Court: It is so ordered.