**RICKS v. JOHNSON.**

No. 5059—Opinion Filed Jan. 2, 1917.

(162 Pac. 476.)

**1. Bills and Notes—Security for Pre-Existing Debt—Defenses.**

One who, for valuable consideration and in due course, takes a negotiable instrument as collateral security for a pre-existing indebtedness, holds the same unaffected by equities between the original parties of which he had no notice; and this rule is applicable to transactions had in that part of Oklahoma known as the Indian Territory prior to statehood.

**2. Same—Release of Maker.**

The maker of a negotiable promissory note held as collateral security for the payment of a principal debt will be released under

the same circumstances that a surety personally bound would be.

**3. Election of Remedies—Bills and Notes—Collateral Security.**

The holder of a note as collateral security cannot be compelled to make an election as to whether he will enforce the principal or collateral obligation.

**4. Election of Remedies — Remedies of Pledgee.**

The acceptance of a pledge does not suspend the pledgee's remedies against the debtor after the debt falls due, and the pledgee has an option to make the debt out of the property pledged, or to pursue his remedies against the pledgor in the same manner as if the contract of pledge had not been made.

**5. Pledges — Instruction — Exoneration of Sureties.**

Sections 1056, 1058, and 1061, Rev. Laws 1910, in regard to the exoneration of sureties, analyzed and explained in Palmer v. Noe, 48 Okla. 450, 150 Pac. 462, 464, and in Union Mut. Ins. Co. v. Page 65 Okla. —, 164 Pac. 116, and same approved here.

(Syllabus by Robberts, C.)

Error from County Court, Garvin County; W. R. Wallace, Judge.

Action by C. C. Ricks against J. R. Johnson. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

R. E. Bowling and L. H. Hampton, for plaintiff in error.

Carr & Field, for defendant in error.

Opinion by ROBBERTS, C. This case comes from the county court of Garvin county, and is a suit on a promissory note. Execution and delivery by maker, and also indorsement and delivery by payee to plaintiff, admitted.

Defendant answers, in substance and effect, that prior to indorsement and delivery by the payee to plaintiff of the note sued on consideration failed, in that the contract between the defendant (maker) and payee (indorser) was canceled by mutual agreement, which facts were known to the plaintiff (indorsee) prior to the time he purchased or obtained the note from the payee. Trial to jury, and verdict and judgment for the defendant.

Two propositions are prominently presented for the consideration of the court here: First, the question of the sufficiency of the evidence to sustain the verdict; and, second, the giving of certain instructions.

Upon the first question we find that the evidence is conflicting. There is some testimony tending to support the fact that the

plaintiff knew 'that the defendant was claiming and insisting upon a rescission of the contract and failure of consideration for the note at the time he obtained possession thereof. On the other hand, there is testimony supporting the contentions of the plaintiff that he had no knowledge of the defense claimed by the defendant, and that he was an innocent purchaser and holder of the same.

Under the well-known and long established rule in this state that "this court will not disturb the verdict of a jury upon a controverted question of fact where there is ample testimony both for and against the fact at issue," and that "where a cause is tried before a jury, and a general verdict returned, and judgment rendered on the verdict, and the evidence is conflicting and contradictory, and there is competent evidence to sustain the verdict, this court will not undertake to weigh the evidence, or to determine the preponderance, but will sustain the verdict of the jury," we pass from that question to the consideration of the law as presented in the instructions of the court.

But we will first speak of the contention of the defendant, as presenting the basis upon which the court gave the instructions complained of. The plaintiff was the owner and holder of a certain note against one F. H. Carr for the sum of $——, and it is claimed by plaintiff that he held as collateral to said note another note on one Abby Jones; that Carr was the owner and holder of the note sued upon, being a note dated August 23, 1906, for the sum of $625 in favor of F. H. Carr or order, signed by defendant, J. R. Johnson, and made payable December 31, 1911; that before the maturity of said last-mentioned note Carr, for valuable consideration, indorsed and delivered the same to the plaintiff, to be held by him as collateral security to the original note against Carr in lieu of the Abby Jones note, which was at the time taken up by Carr. The Johnson note was duly indorsed and delivered by Carr to plaintiff. Covering this issue the defendant in his answer alleges:

That "if the plaintiff has any interest or ownership in said note whatever, that said interest of said plaintiff in the same arose out of and is collateral to an indebtedness and a note as executed by F. H. Carr direct to the said plaintiff for the sum of $——dollars; that after the execution and delivery of the said note by F. H. Carr to said plaintiff, C. C. Ricks, and after the maturity of the said note and the indebtedness due thereon, that the said F. H. Carr delivered the note sued on in this action as additional security and delivered same to said plaintiff to be held by him as collateral for the payment of the said note as executed by F. H. Carr. Said defendant alleges further in this connection that in a short time after the delivery of the note sued on in this action by said F. H. Carr to said plaintiff herein the defendant, J. R. Johnson, in person, went to said plaintiff and informed him that the consideration for which this note was given failed, and that he had been released therefrom by said F. H. Carr, and at that time the said defendant, J. R. Johnson, informed the plaintiff herein that the said note had been placed in plaintiff's hands as additional security for the payment of the note held by said plaintiff against said F. H. Carr, and that, as said defendant's note was placed in said plaintiff's hand merely as security, and that as the said F. H. Carr at that time owned property both personal and real in Garvin county, Okla., said defendant herein demanded of the plaintiff, C. C. Ricks, that he institute suit against said F. H. Carr on said note in order to enforce the payment thereof, said defendant giving said plaintiff warning that unless he did so he would not be responsible as surety for the payment of said note. Said defendant further avers that at the time of the giving of this note, and for more than one year thereafter, F. H. Carr was a resident of Garvin county, Okla., and had property in said county subject to execution of a sufficient amount to more than pay said plaintiff's claim on said original note for the payment of which the note sued on in this action was delivered to the plaintiff as collateral security therefor. Said defendant further alleges that said plaintiff has wholly failed at any time to institute any suit against the said F. H. Carr, or attempted in any way to enforce the collection of said note against him, although at the time of the filing of this action and at the present time the said F. H. Carr is the owner of property both personal and real situated in Garvin county, Okla., subject to execution."

Presumably pertinent to this issue, the court in the sixth paragraph of instructions told the jury:

"You are instructed that the mere loaning or temporary delivery of a note with no intention on the part of the one to purchase or acquire title to the note, and no intention on the part of the other to part with or transfer title to the note, is not such a transfer or assignment of same to give the holder title to said note, so as to entitle him to maintain an action on said note as the owner thereof as a purchaser for value."

In the first place, if the court intended by this instruction to tell the jury that, "if they found that Carr merely intended to loan the note to the plaintiff, or that if he temporarily delivered the note to plaintiff with no intention of parting with title, such transfer and delivery would not authorize the holder to maintain an action thereon," to our mind such direction would not only be

misleading, but would be prejudicial error. We are unable to find any testimony in the record calling for such an instruction, and most certainly, as we view the evidence, such an instruction, would mislead the jury. They might, and no doubt did, take this instruction to mean that the court construed the law upon this phase of the case to be that a transfer of the note as collateral security did not give the holder or transferee the right to maintain an action thereon. Such is not the law in this state. In Farmers' Nat. Bank v. McCall, 25 Okla. 600, 106 Pac. 866, 26 L. R. A. (N. S.) 217, this court says:

"The holder of a negotiable instrument as collateral security for a pre-existing indebtedness and an extension thereon retains the same unaffected by equities between the original parties of which it had no notice."

Counsel for defendant in error contend that the rule laid down in Farmers' Nat. Bank v. McCall, supra, is not applicable in this state, for the reason that the note in controversy was made in the Indian Territory prior to statehood while the Arkansas law was in force, and that the Supreme Court of that state held a different rule. We cannot agree with counsel upon that proposition. We find in a somewhat recent case, Miles v. Dodson, 102 Ark. 422, 144 S. W. 908, 50 L. R. A. (N. S.) 83, that court says:

"One taking negotiable paper as collateral for a newly incurred or pre-existing indebtedness is entitled to the protection as an innocent holder."

Again in Exchange Nat. Bank v. Coe, 94 Ark. 387, 127 S. W. 453, 31 L. R. A. (N. S.) 287, 21 Ann. Cas. 934, the same court uses this language:

"The indorsee before maturity of a promissory note as collateral security for an existing debt is entitled to the rights of a holder for value."

To our mind, the trial court also committed reversible error in the fifth paragraph of its instructions, which is as follows:

"You are instructed that under the law of Oklahoma then in force in the Indian Territory, where the note sued upon was executed, one who executes a note as security only after default of the payment of the note for which he was held as security, if he would go to the holder of said note and demand of him that he proceed against the principal obligor, who had property, goods, and chattels out of which the note could be made and payment enforced, against said obligor, and after such demand the holder of such note sits by and fails to enforce payment, and thereafter the principal obligor of said note disposes of his property and be-

comes insolvent, and it becomes impossible to enforce payment, then said surety is released from further liability on said note. And if you find from the evidence in this case that, after J. R. Johnson learned that Ricks had his note, he went to Ricks and demanded that he collect the money from Carr, and Ricks neglected and failed to do so, and after this said F. H. Carr, sold and disposed of all his property, and said note could not be collected from said F. H. Carr, then you are instructed that the holder of said note having failed to exhaust his remedy against the principal, F. H. Carr, the said surety, J. R Johnson, would be released from further liability, and your verdict would be for the defendant."

This instruction was, no doubt, given under the idea that it was authorized under section 1058, Rev. Laws 1910, which is as follows:

"A surety may require his creditor to proceed against the principal, or to pursue any other remedy in his power which the surety cannot himself pursue, and which would lighten his burden; and if in such case the creditor neglects to do so, the surety is exonerated to the extent to which he is thereby prejudiced."

In a case just recently handed down (Union Mut. Ins. Co. v. Page et al., 65 Okla. —, 164 Pac. 116), this court had under consideration the question of the right of a surety under similar circumstances, and in passing upon the question laid down the rule of this court as follows:

"The recent decisions of this court clearly settle the doctrine in this state upon the questions under consideration here in favor of the contentions of plaintiff in error. In the case of Palmer v. Noe, 48 Okla. 450, 150 Pac. 462, 464, the court says:

" '* * * Section 1056, Rev. Laws 1910, provides when sureties may be exonerated, and this section is as follows: "A surety is exonerated: First. In like manner with a guarantor. Second. To the extent to which he is prejudiced by an act of the creditor which would naturally prove injurious to the remedies of the surety or inconsistent with his rights, or which lessens his security, or, Third. To the extent to which he is prejudiced by an omission of the creditor to do anything, when required by the surety, which it is his duty to do."

" 'Section 1058, Rev. Laws 1910, provides that a surety may require the creditor to proceed against the principal under certain conditions. This section is as follows: "A surety may require his creditor to proceed against the principal, or to pursue any other remedy in his power which the surety cannot himself pursue, and which would lighten his burden; and if in such case the creditor neglects to do so, the surety is exonerated to the extent to which he is thereby prejudiced."

" 'The defendant insists that under section 1058 and subdivisions 2 and 3 of section 1056 he is released from liability upon the note sued on, for the reason that the plaintiff failed to comply with the oral request made to his attorney to proceed against the principal and sureties upon said note at a time when the principal was solvent and amply able to pay the debt, and that in the meantime the principal and the other sureties became insolvent, and that his failure to so proceed prejudiced his rights and remedies against the principal and his cosureties. With this contention we cannot agree. It was not the duty of the plaintiff to sue the principal, and, not being his duty, his failure to do so was not prejudicial to the rights and remedies of the defendant. The defendant obligated himself to pay the debt, and upon the failure of the principal to pay it at maturity it was his duty to pay it and proceed against the principal and his cosureties under section 1061, Rev. Laws 1910.

" 'Plaintiff had the option to sue any or all of the makers of this note, and, having this option, his failure to comply with the oral request of the defendant would not operate as a release of liability. If, as a matter of fact, the principal and the other sureties thereon were solvent, it was the plain duty of the defendant to pay the obligation and proceed to protect himself under the statute.'

"Later in a similar case, Miller v. State ex rel. Lankford, 52 Okla. 76, 152 Pac. 410, this court adopted and approved the doctrine in Palmer v. Noe, supra, in the following language:

" 'On the merits the question presented in this case cannot be distinguished from Palmer v. Noe, 48 Okla. 450, 150 Pac. 462: "Under section 4694, Rev. Laws 1910, the payee of a promissory note may, at his option, sue one of the sureties, without joining the maker and the other sureties as parties defendant; and his failure to sue the maker and other sureties does not operate as a release of the surety sued. The failure of the payee of a promissory note to sue the principal upon the oral request of the surety sued, made long after the maturity of the note to the attorney of the payee, who had the note for collection, does not operate as a release of the surety sued, even though the principal, at the time the request was made, was solvent and amply able to pay the note, and in the meantime he and the other sureties thereon became insolvent, it being the duty of the surety, upon the failure of the principal to pay the note when due, to pay the same, and pursue his remedy against the principal and his cosureties."

" 'Counsel for the plaintiff in error has earnestly requested us, in a well-considered brief, to reconsider the question decided in that case and overrule it. But, after a careful consideration of the authorities, we are satisfied that the case was rightfully decided, and, in addition the importance of adhering to the decisions of this court once made, and

thus preserving a conformity in the law, cannot be overestimated.' "

This brings us to the question as to the relation of the maker of a note held by another as collateral security to the principal debt, and as to whether such maker in the collateral note would be released by the failure of the pledgee to force collection, or attempt to do so, from the pledgor, when requested or demanded to do so by the maker in the collateral note. The instruction seems to have been given on the theory that the maker on the collateral note stands in the same relation to the other parties as surety for the original or principal debt, at least to the amount of his obligation. The test here is: Did the failure of the pledgee to proceed against the pledgor upon the principal debt, on demand of the defendant herein, release him on the note sued on? We think not, and view the law as indicated by the trial court in the instruction, viz., that the defendant stands in the same relation to the other parties, pledgor and pledgee, as a surety upon the principal debt, and would be held or released under the same circumstances as a surety. In Daviess County Bank v. Wright, 129 Ky. 21, 110 S. W. 361, 33 Ky. Law Rep. 457, 17 L. R. A. (N. S.) 1122, the court says:

"Property pledged as collateral for a note will be released under the same circumstances that a surety personally bound would be."

And in 31 Cyc. 864, the author says:

"A pledgee cannot be compelled to make an election as to whether he will enforce the principal or collateral obligation."

And in Enc. Law, vol. 22, 871:

"The acceptance of a pledge does not suspend the pledgee's remedies against the debtor after the debt falls due, and the pledgee has an option to make the debt out of the property pledged, or to pursue his remedies against the pledgor in the same manner as if the contract of pledge had not been made."

See, also, Ehrlich v. Ewald, 66 Cal. 97, 4 Pac. 1062; Sonoma Val. Bank v. Hill, 59 Cal. 107; Robinson v. Hurley, 11 Iowa, 410, 79 Am. Dec. 497.

This, we believe to be the sound rule on principle, and also supported by the authorities.

While this instruction under consideration is not directly argued in the brief of plaintiff in error, exceptions were properly taken and preserved to the giving of the same and assignment of error based thereon. Besides, to our mind, it is so evidently misleading that

we cannot pass it over, but will consider it as duly and properly presented.

The case should be reversed and remanded for new trial.

By the Court: It is so ordered.