## SWIFT & CO. v. COLVERT.

No. 13403—Opinion Filed Sept. 16, 1924.

Rehearing Denied Nov. 18, 1924.

### Novation—Elements.

In order to complete the contract of novation, it is necessary that the party seeking to show that he is entitled to the benefit of such a contract and to be released from liability, shall be able to show, not only that the new party undertaking to assume the liability shall have completed such a contract with him, but that such new party shall also have so sufficiently and fully contracted with the creditor, and that the creditor shall have plainly signified his assent to the discharge of the debtor, but also his assent to the new liability and that such new liability shall be so understood and perfected as that the creditor shall be able to hold the new debtor legally liable thereon.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Carter County; B. C. Logsdon, Judge.

Action by Swift & Company against George W. Colvert. Judgment for defendant, and plaintiff appeals. Reversed.

Slough & Gibson, for plaintiff in error.

H. C. Potterf and Earl Q. Gray, for defendant in error.

Opinion by JARMAN, C. This action was commenced in the district court of Carter county by Swift & Company, as plaintiff, against George W. Colvert, as defendant, to recover the sum of $1,108.07, balance alleged to be due under a contract for goods furnished. Judgment was rendered for defendant, and plaintiff brings error.

For a defense the defendant pleads a contract of novation. On December 12, 1919, Swift & Company entered into a written contract with George W. Colvert whereby Colvert was to have the exclusive right to handle fertilizer products for Swift & Company at Fort Stockton, Tex. Colvert was authorized to sell fertilizer on credit, but was required to take notes from the purchasers payable to Swift & Company, and, by the terms of said contract, Colvert guaranteed the payment of said notes. The contract further provided that Colvert was to make settlement with Swift & Company by May 1, 1919, for fertilizer furnished. Under this contract shipments were made to Colvert. On February 17, 1919, Colvert, without the knowledge or consent of Swift & Company, entered into an oral agreement with E. Barry whereby Barry was to take over and execute the contract with Swift & Company and relieve Colvert of any further liability in connection therewith; and on April 25, 1919, said contract between Barry and Colvert was reduced to writing and Barry continued to run the business. All correspondence with reference to the fertilizer business was addressed by Swift & Company to Colvert. On May 21, 1919, no settlement having been made for the fertilizer furnished, Swift & Company wrote to Colvert demanding a settlement, and on May 27, 1919, Colvert, who was then residing at Ardmore, Okla., wired Swift & Company, in answer to their letter of May 21, 1919, that he had disposed of his fertilizer business to E. Barry, and stated in his telegram that a letter would follow concerning the transaction. Upon receiving this telegram, Swift & Company, on May 27, 1919, wired Colvert that they were holding him accountable for all fertilizer shipped, and that they did not recognize any transfer of the account to Barry and demanded a settlement. On May 27, 1919, Colvert wired Swift & Company as follows: "Keep your shirt on. Am taking up matter and will see you get your money." The letter referred to by Colvert in his telegram of May 27, 1919, advised Swift & Company that he had sold out his business to Barry and that Barry had been handling the business and agreed to take care of the indebtedness, and asked that Swift & Company take up the matter of settlement of the account with Barry. The telegram and this letter were the first information Swift & Company had of the deal between Colvert and Barry. In making remittances to Swift & Company, Barry signed "E. Barry for Geo. W. Colvert." On June 14, 1919, Barry wrote to Swift & Company as follows: "I herewith hand you check for $1,270, and 16 notes in settlement of the account of Geo. W. Colvert, fertilizer account." The check referred to bore the indorsement, "settlement of G. W. Colvert Acct." The notes, which were forwarded to Swift & Company, and which were given by persons purchasing fertilizer, bore an indorsement signed by

Barry, guaranteeing the payment of said notes.

At the conclusion of all of the evidence the court sustained the motion of the defendant for a directed verdict, and entered judgment on said verdict for the defendant.

The only question presented on appeal is whether novation was established. The plaintiff contends that novation was not shown for the reason that the evidence fails to show that the plaintiff agreed to a substitution of Barry for the defendant, and that the plaintiff agreed to release the defendant and accept Barry for the performance of the contract. The defendant contends that, while there was no formal agreement on the part of the plaintiff to release the defendant and accept Barry for the performance of the contract, yet when the plaintiff, after receiving notice from the defendant that he had sold the fertilizer business to Barry and Barry was to carry out the terms of the original contract, accepted the check for $1,270, signed by Barry, and accepted the 16 notes, with Barry guaranteeing the payment, the assent of the plaintiff to the substitution of Barry for the defendant was shown. It is true that such assent may be inferred from circumstances, but we do not think there is anything in the conduct of the plaintiff to show that the plaintiff intended, by accepting the check and the 16 notes, to release the defendant and accept Barry for the performance of the contract. In writing the letter, enclosing the check referred to, Barry did not refer to the account as his, but stated that the check and the 16 notes were being sent to the plaintiff in settlement of the "account of G. W. Colvert"; and the indorsement on the check was "settlement of G. W. Colvert fertilizer Acct."—not in settlement of the account of Barry. The conduct of Barry, in sending the check and the notes to the plaintiff, was in keeping with the theory on which the plaintiff had been proceeding, which was that Barry was merely acting for Colvert in connection with these transactions. No contractual relation ever existed between the plaintiff and Barry. The defendant failed in his proof to bring himself within the rule announced by the court in the case of Burford v. Hughes, 75 Okla. 150, 182 Pac. 689, as follows:

"In every novation it is essential that the new contract in which there is a substituted debtor shall be valid; that all parties thereto must agree to the substitution of the new contract and debtor, and that the old contract be a valid one and extinguished by the giving of a new contract. When such is the case, the substituted obligation is a new contractual relation, and one in which the old obligation is in no way concerned." Gaar, Scott & Co. v. Rogers, 46 Okla. 67, 148 Pac. 161; Fuller v. Stout, 66 Okla. 15, 166 Pac. 898.

The judgment of the trial court is reversed, and the cause remanded for new trial.

By the Court: It is so ordered.