## SWIFT & CO. v. COLVERT.

No. 16757.    Opinion Filed Aug. 2, 1927.

Rehearing Denied Oct. 11, 1927.

(Syllabus.)

1. **Accord and Satisfaction—Novation— Factor's Liability on Contract with Wholesaler of Products—Defense of Factor Selling out Business to Third Party.**

A party having entered into a written contract with a company for the exclusive agency and handling of the company's fertilizer, and contracting and agreeing therein to remit all cash sales to the company by a certain date and indorse and guarantee the payment of notes taken for the sale of such fertilizer, cannot avoid his liability under such contract upon a plea of accord and satisfaction by proving, under such plea, that another, or third person to whom he had sold his business, had remitted to the company the time sale notes with the third party's indorsement thereon and his check for the cash sales in an amount and sum which the third party claimed in full settlement, unless he, the debtor, show an accord and satisfaction as defined below on the account and notes, **and in addition** thereto prove and show that the new party undertaking to assume the liability sufficiently and fully contracted with the creditor; that the creditor shall have plainly signified his assent to the discharge of the original debtor; creditor's assent to the new liability; and that such new liability was so understood and perfected as that the creditor shall be able to hold the new debtor legally liable under the contract.

2. **Same—Elements of Accord and Satisfaction—Burden of Proof.**

Elements constituting accord and satisfaction are : Liability of defendant; agreement of the amount to be paid; and acceptance of such agreement in settlement of the original claim or dispute; defendant setting up accord and satisfaction must plead and prove such elements.

3. **Appeal and Error—Reversible Error—Hearsay Evidence—Letters Between Defendant and Third Party.**

In an action on a contract, account and notes, the admission on behalf of the defendant over objection of plaintiff of certain letters and correspondence had between defendant and a third party, in which letters the third party asserts he had made settlement of the account sued upon, that he alone is liable on the notes, that there were certain shortages in the merchandise, and that he will protect defendant, that his evidence will clear defendant, etc., held, under the facts, that such letters are hearsay, not binding upon plaintiff, and that their admission was prejudicial and reversible error.

Commissioners' Opinion, Division No. 1.

Error from District Court, Carter County; W. F. Freeman, Judge.

Action by Swift & Company against Geo. W. Colvert. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Slough & Gibson, for plaintiff in error.

H. C. Potterf, Earl Q. Gray, and J. M. Poindexter, for defendant in error.

LEACH, C. This action arose in the district court of Carter county, wherein Swift & Company sued Geo. W. Colvert for recovery of the sum of $1,108.07, alleged to be due the plaintiff for fertilizer furnished and consigned to defendant by plaintiff under written contract between the parties. Defendant filed his answer and amendments thereto, denying the allegations of plaintiff's petition, and further alleged, in substance, that the indebtedness due plaintiff, if any, was due and owing by the estate of E. Barry by reason of a certain contract between defendant and the said E. Barry, wherein the said Barry was to carry out the terms of the contract between the company and defendant; that there was a shortage in weights in shipments of fertilizer, amounts not alleged; that E. Barry paid plaintiff an amount in full settlement of the account sued upon, which sum was accepted by the company in full settlement of the account, and released defendant and E. Barry from urther liability thereon. In the second amendment to the answer it was alleged that plain-

tiff accepted a check from E. Barry and certain notes executed by various parties and indorsed by E. Barry in full settlement of the liability, if any, of the defendant, which said check and notes were paid, with the exception of two notes aggregating the su.. of $511.50, which remaining notes would have been paid and could have been collected had plaintiff exercised diligence in attempting to collect them, and plaintiff delayed and neglected to exercise diligence towards collecting the notes until the said E. Barry died, and the same were now barred; that said notes were collateral notes, and that it was plaintiff's duty to use diligence in collecting them, and by its failure to exercise such diligence had damaged defendant in the amount of said notes.

Plaintiff replied to defendant's answer, and upon the issues joined a trial was had, resulting in a verdict and judgment in favor of defendant, and plaintiff appeals. The parties will be referred to as they appeared below, except where plaintiff may be referred to as "the company."

This is the second time this cause has been before this court. In the first trial in the lower court, an instructed verdict for defendant was returned upon the ground that the evidence showed a "novation." Upon appeal from said first judgment, the same being cause No. 13403 in this court, reported at 104 Okla. 130, 230 Pac. 510. the court reversed the judgment of the lower court holding that there had been no novation, and remanded the cause.

Plaintiff again seeks a reversal of judgment of the trial court, under the second trial. and assigns error, and argues its several assignments of error under three propositions: (1) That there was no settlement, accord and satisfaction; (2) that defendant was not discharged as guarantor of said notes; (3) that illegal evidence was admitted to the prejudice of plaintiff in error.

The evidence, in part, discloses that Swift & Company entered into a written contract with Geo. W. Colvert, defendant, wherein Colvert was to have the exclusive right to handle fertilizer products of the company at Fort Stockton, Tex., for the season ending May 1, 1919, which contract, among other provisions and paragraphs, contained the following:

"7. You agree to obtain cash or promissory notes from purchasers, at the time of delivery to them of any of said fertilizers, the notes to be on our forms, payable to our order, drawing interest at six per cent.

per annum from May 1, 1919, until paid, and maturing on or before October 1, 1919, in settlement for all fertilizers sold by you for us under this contract, and to deliver said cash and notes to us on May 1, 1919, or before that date if requested by us."

"8. You expressly guarantee prompt payment without our first exhausting remedies against principal debtors, of all notes and accounts resulting from sales made by you, and as evidence of your said guaranty you agree to execute and deliver to us on May 1, 1919, or sooner, if required, your negotiable promissory note or notes upon our form. drawing interest at the rate of six (6) per cent. per annum, from May 1, 1919, until paid, for all fertilizers delivered hereunder and not settled for in cash at the time of the execution and delivery of said note or notes. You hereby waive demand, protest and notice of default in payment by principal debtors of said notes and accounts. The said guaranty notes shall be due and payable in equal sums, respectively, to wit: October 15, 1919, November 1, 1919, November 15, 1919."

"10. The fertilizers consigned to you hereunder and the cash, notes, accounts and the proceeds thereof, resulting from the sale of said fertilizers, shall at all times be and remain our property."

Under this contract, approximately 295 tons of fertilizer were shipped to the defendant. On February 17, 1919, defendant, Colvert, without the knowledge or consent of the company, entered into an oral contract, which was later reduced to writing, with one E. Barry, whereby Barry was to take over and carry out the terms of the contract with Swift & Company, and relieve Colvert of any further liability thereon. On May 21, 1919, no settlement having been made for the fertilizers, Swift & Company wrote defendant, Colvert, demanding a settlement, to which letter Colvert, who was then residing at Ardmore, Okla., wired the company that he had disposed of his business to E. Barry, and also wrote the company advising that he, Colvert, had sold out his business to Barry, who had been handling the business, and asked the company to take up the matter of settlement with Barry. Upon receipt of Colvert's telegram the company wired Colvert that they were holding him accountable for all fertilizers shipped; that they did not recognize any transfer of account to Barry, and asked Colvert to meet the company's representative at Fort Stockton to adjust the account, to which Colvert replied:

"Keep your shirt on. Am taking up matter and will see you get your money."

On June 14, 1919, Barry wrote the company as follows:

"I herewith hand you check for $1,270 and 16 notes in settlement of the account of Geo. W. Colvert, fertilizer account."

The note forwarded to the company bore an indorsement by Barry. A previous remittance and letter from Barry to the company was signed, "E. Barry for Geo. W. Colvert."

The check and notes referred to were received and retained by the plaintiff, and it is upon these facts that defendant bases his claim of settlement, contending that the acceptance of the check and notes by plaintiff, and its failure to immediately protest this offer of settlement, constituted a settlement, an accord and satisfaction, and that plaintiff could not later repudiate the settlement or ask anything additional.

However, on July 26, 1919, the company wrote defendant, Colvert, not Barry, the following letter:

"We are without reply to our letter of June 3rd, regarding this account.

"There is still a large balance unpaid in cash, and while we have the farmers' notes to cover that, we must also have your guaranty note to cover these time sales.

"We are awaiting further advice from Mr. Barry, and, in the event that no more cash is paid within the next few days, we will make up guaranty notes for your signature"

Defendant's contract with the plaintiff, among other things, provides:

"7. You agree to obtain cash or promissory notes from purchasers, at the time of delivery to them of any of said fertilizers, the notes to be on our forms, payable to our order * * * in settlement for fertilizers sold by you for us under this contract, and to deliver said cash and notes to us on May 1, 1919, or before that date if requested by us."

In other words, the fertilizer was not sold to defendant, but only consigned to him to be sold by him for the plaintiff. Therefore, Barry, in remitting to plaintiff the money and notes, was only carrying out the express provisions of the contract for the defendant, and plaintiff's acceptance of the check and notes, in the absence of any agreement or intention to settle, cannot be held to be an acceptance of an offer of settlement, even though the check bore the indorsement "Settlement of Geo. W. Colvert Fertilizer Acct." Sherman v. Pacific Pipe Line Co., 60 Okla. 103, 159 Pac. 333; Sanditen v. Allied

Ref. Co., 84 Okla. 47, 202 Pac. 316; Commercial Union Assurance Co. v. Creek Cotton Oil Co., 96 Okla. 189, 221 Pac. 499.

The rule that, to constitute an accord and satisfaction, the payment must have been accepted as such, requires no citation of authority. The authorities uniformly support the doctrine that an accord and satisfaction is the result of an agreement between the parties, and, like all other agreements, must be accompanied by a meeting of the minds of the parties; that before a smaller sum shall be accepted in discharge of a larger one originally claimed, the agreement must have been entered into by the parties understandingly and with unity of purpose. See R. C. L., vol. 1, p. 183; Matheney v. City of Eldorado (Kan.) 109 Pac. 166.

Defendant contends that where an aggregate amount is in dispute, the payment of a specified sum conceded to be due, that is, by including certain items but excluding disputed items, on condition that the sum so paid shall be received in full satisfaction, will be sustained as an extinguishment of the whole, and cite various cases and authorities in support thereof

If the sum so paid was received by the plaintiff with the intention and understanding that it was to be in full satisfaction of the total amount claimed by plaintiff, then defendant's argument and cases cited would be determinative of the question.

The testimony of Geo. W. Colvert, in substance, was to the effect that he, by his deal with Barry, was discharged of any liability, and that Barry was substituted for him in the contract; and that the reason the account or the notes were not paid by either Barry or himself was because of a dispute with Swift & Company over the amount due the plaintiff. When asked why he did not pay this account he answered:

"A. I didn't owe it. I had a letter from Mr. Barry that it was settled."

He was asked the following question:

"Q. All right then. You were laboring under the idea all of the time that you had substituted Barry in your stead. That is the idea you had, and you felt like you had relieved yourself of any liability to Swift & Company by that means?"

To which he answered: "A. Yes, sir."

There is no evidence in defendant's testimony that tends, or even attempts, to show that Swift & Company had agreed to substitute Barry for him in the contract, or that the company ever accepted Barry's remit-

tance in full satisfaction of the debt other than that Barry wrote him that the same was settled.

For Colvert to have been discharged of his liability there must have been a novation of the contract, or an accord and satisfaction, as contended by the defendant. This court has already held in the former appeal that there was no novation of the contract, that Swift & Company never substituted Barry for the defendant in the contract. We have searched the record and find no evidence showing or tending to show that the plaintiff ever intended to accept Barry's check and notes (which funds and notes they were already entitled to under the contract) in full settlement of the amount claimed. On the contrary, we find the plaintiff, from the date the contract was entered into with the defendant until the present time, relying on the terms of the contract, and insisting that the defendant comply therewith. True, the record shows that there was a lapse of 42 days from the date Barry wrote the plaintiff on June 14th, sending check and notes, until plaintiff's next letter to defendant regarding the contract, but we do not think this was an unreasonable time, or that it denoted acceptance of settlement in full under the circumstances. If payment, or accord and satisfaction, be properly pleaded, and sufficient evidence introduced to raise the issue, it is one of fact to be decided by a court or jury. The plaintiff should have moved for an instructed verdict on the plea of payment or accord and satisfaction if it appeared there was no sufficient evidence to raise and warrant its submission to a jury, thereby having the matter passed upon by the trial court, as was indicated by this court on a similar issue in the case of Deming Inv. Co. v. McLaughlin, 30 Okla. 20, 24, 118 Pac. 380.

The question of settlement as to the cash payment under the Barry check was submitted to the jury in the first part of the trial court's instruction No. 3, which instruction was objected and excepted to by plaintiff and given as grounds for reversal herein. We think the objection good because the instruction given does not properly inform the jury as to the necessary elements to constitute payment, or accord and satisfaction. The instruction complained of, in substance, merely told the jury that, if they found that Barry sent plaintiff a check and notes in settlement of the account, and plaintiff received such check and notes in settlement of the account, and said check and notes have been paid except the last

two notes, then, upon such finding, a recovery could only be had as against the defendant for the amount of the unpaid notes, unless they found that the settlement was received and accepted by the plaintiff under some mistake or through some error or oversight.

This court, in the case of Gunn v. Fryberger, 71 Okla. 170, 176 Pac. 248, defines "accord and satisfaction" as follows:

To constitute accord and satisfaction there are three elements necessary: "First, liability of the defendant; second, agreement of the amount to be paid; third, acceptance of this agreement in settlement of the original claim or dispute."

See, also, Continental Gin Co. v. Arnold, 52 Okla. 569, 153 Pac. 160; Gentry v. Fife, 56 Okla. 1, 155 Pac. 246; Deming v. McLaughlin, 30 Okla. 20, 118 Pac. 380 ; Fern v. First Nat. Bank, 119 Okla. 228, 249 Pac. 405; Sherman v. Pacific Coast Pipe Line Co., 60 Okla. 103, 159 Pac. 333.

In view of the record we think the court should have instructed the jury in accordance with the authorities herein cited, and given the jury to know and understand what were the elements and law necessary to constitute payment, or accord and satisfaction, and that the instruction given was insufficient.

The next question presented is: Was the defendant discharged as guarantor of the notes in question?

Defendant's answer to this question is: First, that by the settlement made by E. Barry on June 14, 1919, the guaranty or obligation of Geo. W. Colvert was fully paid and satisfied, and no obligation of Colvert remained as guarantor or otherwise.

There is nothing in the record to indicate that it was intended to relieve the defendant of his guaranty on the notes under his contract, even though the company should be held to have accepted the Barry check in settlement of the cash sales. Davis v. Davis, 103 Okla. 83, 229 Pac. 479. Such issue and theory of the defendant was not submitted to the jury, and under the record such position is untenable.

Second, defendants contend: That if Colvert in any manner remained liable, Swift & Company, by their own letter in their own words, stated that the notes were collateral to the obligation, and have assumed the duty of protecting and preserving the value of the collateral, and have failed in this duty in not collecting the

notes from Barry to the damage of Colvert in the amount of the notes, and that he is discharged of liability thereby.

Granting the notes were, as contended, collateral security for the original debt, yet, the plaintiff was not bound to protect this collateral as against any one; that collateral security is the very thing the defendant guaranteed the payment of, and it is obvious from the guaranty clause of the contract that the converse of this contention is true, i. e., that the defendant was bound to protect the plaintiff on the security. Defendant's contract of guaranty is embodied in the eighth paragraph of the contract as follows:

"You expressly guarantee prompt payment without our first exhausting remedies against principal debtors, of all notes and accounts resulting from sales made by you, and as evidence of your said guaranty, you agree to execute and deliver to us on May 1, 1919, or sooner, if required, your negotiable promissory note or notes upon our form, drawing interest at the rate of 6 per cent. per annum from May 1, 1919, until paid, for all fertilizers delivered hereunder, and not settled for in cash at the time of the execution and delivery of said note or notes. You hereby waive demand, protest and notice of default in payment by principal debtors of said notes and accounts. Your said guaranty notes shall be due and payable in equal sums, respectively, to wit: October 15, 1919; November 1, 1919, November 15, 1919."

This express provision of the contract made defendant an unconditional guarantor on all notes for fertilizers sold by him. Plaintiff was rightfully entitled to the guaranty notes called for by the contract, and at all times demanded that defendant comply with the contract and execute the guaranty notes, and although defendant failed and refused to execute the same, he is none the less liable, for we hold his guaranty contract is sufficient, in itself, to hold him to his guaranty.

Section 5123, C. O. S. 1921, defines a "guaranty" as follows:

"A 'guaranty' is a promise to answer for the debt, default or miscarriage of another person."

Section 5133, C. O. S. 1921, reads:

"A 'guaranty' is to be deemed unconditional, unless its terms import some condition precedent to the liability of the guarantor."

Section 5134, C. O. S. 1921, reads:

"A guarantor of payment or performance is liable to the guarantee immediately upon the default of the principal, and without demand or notice."

These statutes applied to the facts in the instant case convince us that defendant's guaranty is absolute and unconditional, and that it was the duty of the defendant to see that the notes were paid at maturity.

In the case of Master et al. v. Boyes, 44 Okla. 526, 145 Pac. 363, being a case where the note sued on was collateral security, the syllabus reads:

"Under an absolute unconditional guaranty, the duty is upon the guarantor to see that his contract of guaranty is fulfilled, and that the obligations of the principal are discharged at maturity; and in the absence of fraud, which may be the proximate cause of damage to the guarantor, a lack of notice and demand, or the fact that the principal at maturity * * * became insolvent, does not constitute a defense that will discharge the guarantor from liability."

And in the opinion we find the following:

"This rule, which is supported by the weight of both English and American authorities places the duty upon the guarantor to see that his contract of guaranty is fulfilled, and this doctrine is given voice by our Legislature in the above statute, which, in fixing the liability upon the guarantor immediately upon the default of the principal logically imposes upon him the burden of seeing that his contract of guaranty is fulfilled at maturity."

See, also, Palmer v. Noe, 48 Okla. 450, 150 Pac. 462; Ricks v. Johnson, 62 Okla. 125, 162 Pac. 476.

In Bank of Newbury v. Sinclair, 60 N. H. 100, 49 Am. Rep 307, the court said:

"The terms of a guaranty seem to impose on the guarantor the duty of seeing whether the principal pays. If the principal does not pay, and the guarantor sustains loss through ignorance of his default, the loss is owing to his own negligence, and it seems much more appropriate that it should be borne by him than by the person to whom he has agreed to be answerable upon the principal's default. * * * "

Under date of October 1, 1919, the company wrote defendant as follows:

" * * * We trust you will, in some way, arrange that the farmers who are owing for our fertilizer will be urged to pay their notes. We have written all of them, and more than likely the bank will co-operate in getting them paid, but, by not having you on the ground, will be a handicap in following up those who want to put off payment."

In the instant case the defendant knew

plaintiff did not recognize his agreement with Barry, and knew the principals on the notes had defaulted, and that the plaintiff was insisting and making repeated demands upon him to adjust his account, all of which he ignored, and then seeks to avoid the contract on the grounds that the plaintiff should have proceeded against Barry as the indorser and obligor. Under the facts set forth we think this contention is untenable.

Defendant's last defense to the guaranty contract is:

"Third, that if it be considered that Colvert remained liable as guarantor or even as absolute guarantor, that he has been released by the unwarranted action of Swift & Company in demanding twice the amount due them and thus preventing the collection of the notes from E. Barry and destroying their value."

This contention again presupposes that Barry, in some way, was the person to whom plaintiff should have looked for payment of the notes, and is without merit. The defendant remained liable as guarantor, and was the only guarantor on the notes and only debtor on the account, and the fact that Barry did not pay them because of an alleged dispute as to the amount due, or for any other reason, is of no consequence.

The court refused to give the following instruction requested by plaintiff:

"Gentlemen of the jury, you are instructed that under the terms of the contract, in evidence, the defendant unconditionally guaranteed the payment of the notes in evidence attached to plaintiff's deposition, one signed by Harris & Johns, in the sum of $372, payable to the plaintiff, and the other signed by R. M. Warnock in the sum of $139.50, and is liable for the payment of same, the plaintiff was under no legal obligation to present said notes for payment to either makers or E. Barry, indorser, or (to) give to defendant or E. Barry notice of nonpayment, and was under no obligation to exhaust any or all legal remedies for the collection of same, either as to the makers of the said notes or the indorser, E. Barry"

—but gave one substantially the opposite, instructing the jury that if they found the notes were indorsed and guaranteed by E. Barry, that he, Barry, was solvent, and that the same could have been collected from him, but through the fault of plaintiff in not demanding and enforcing payment as against Barry, the same were now uncollectable, then their verdict should be for defendant.

The failure to give defendant's requested instruction, or one covering the points indi-

cated thereon, and the giving of instruction No. 3, we hold to constitute reversible error.

Plaintiff complains of the admission, over objection of plaintiff, of certain letters from E. Barry to defendant, in which Barry asserts that he made a full and complete settlement with plaintiff, that he is responsible on the unpaid notes provided the company used due effort at the right time to collect them; that his evidence in case of suit will clear defendant, etc. We are unable to see where such evidence would be admissible; it is merely hearsay, not binding upon, and is prejudicial to plaintiff, and its admission constitutes reversible error.

The plaintiff contends that there is due it $1,108 07, while defendant insists that the amount due, if any, is only $511 50, the amount of two unpaid notes. We are not prepared to say, from the record, and are not called upon to determine, the correct amount due the plaintiff. This can only be fixed upon a retrial of this cause.

The judgment of the trial court is reversed and remanded for a new trial in accordance with the views herein expressed.

BENNETT, REID, TEEHEE, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 1 C. J. p. 580, §142; 25 C. J. p. 404 §123. (2) 1 C. J. p. 527, §12: p. 527, §13; p. 529, §16; p. 575, §118; p. 576, §120; p. 580, §142; 1 R. C. L. pp. 178. 183: 1 R. C. L. Supp. p. 56; 4 R. C. L. Supp. p. 10; 5 R. C. L. Supp. p. 6; 6 R. C. L. Supp. p. 6. (3) 4 C. J. p. 999, §2981; 22 C. J. p. 209, §168.