## GREAT AMERICAN LIFE INS. CO. v. MIDDLETON.

96 P. 2d 38.

No. 28605.   Oct. 24, 1939.

C. W. Clift and N. J. Futoransky, both of Oklahoma City, Malloy, Davis & White, of Hutchinson, Kan., and G. W. Cornell, of Oklahoma City, for plaintiff in error.

Charles Hill Johns and Harold Thweatt, both of Oklahoma City, for defendant in error.

HURST, J. Plaintiff, Middleton, sued defendant, Great American Life Insurance Company, for an accounting for his share of the proceeds of certain notes given for insurance premiums, in which he had an interest, and for the appoint-ment of a receiver to take possession of and collect such notes as remained un-paid. Defendant, by its answer, averred that plaintiff was indebted to it in a large sum of money advanced by it, the exact amount being to it unknown, and asked for a general and complete ac-counting of all transactions between the parties. By amended answer it denied indebtedness to plaintiff, alleged that he owed it $20,829.18, and prayed judgment therefor. By reply plaintiff denied owing defendant, alleged that defendant was indebted to him for commissions under certain contracts between them, and joined in the request of defendant for a full and complete accounting. The case was tried as an equity cause, and judg-ment rendered for plaintiff, from which defendant appeals.

Defendant's first contention is that the trial court erred in holding that a con-tract, composed of two letters dated Au-gust 18 and 20, 1930, canceled all indebt-edness of plaintiff to defendant. The let-ters follow:

"August 18, 1930

"Mr. J. W. Middleton
    "18 North Klein,
        "Oklahoma City, Okla.,

"Dear Mr. Middleton:

"This is to advise you that the Com-pany has elected to, and does hereby terminate all of your contracts with the Company, effective at once; the contracts being as follows:

"The General Agency contract, dated March 18, 1929.

"The contract dated April 1st, 1930, between yourself and the Company.

"The contract dated April 1st, 1930, between yourself, Mr. John A. Simpson and the Company.

"While we always regret the necessity of taking such action in instances of this kind, the officers and directors of the Company have given the matter a great deal of serious consideration, and have

arrived at a determination that the best interests of the Company require that this be done.

"Your conduct as a representative of this company has not been satisfactory, not only in that you have failed to comply with requests and instructions from time to time, and in certain acts of disloyalty, but for various other reasons, including your moral delinquencies which materially affect the Company's welfare, and tend to disrupt its organization.

"We will at once take charge of the books, records, furniture, and equipment of the office at 18 North Klein, Oklahoma City, and in the adjustment of your account, which we will of course make in conformity with your contract, we will credit you with any charges on our books representing payments for office furniture, fixtures, and office records, where such items are taken over by us.

"It is the Company's intention to promptly cause a complete audit of the Agency by a Public Accountant to be made, and if same shows a balance in your favor, we will adjust it promptly. If it shows a balance due the Company we will expect you to do the same.

"Very truly yours,

"The Great American Life Insurance Co.
"By S. M. Babbitt, President."

"August 20, 1930.
"Great American Life Insurance
    Company,
    "Hutchinson, Kansas.
"Gentlemen:

"I received notice of cancellation of the contracts I have held with you for some time.

"I desire that we shall discontinue our relations in a peaceable way, and to that end I make you the following proposition:

"I to pass out of the picture that the Oklahoma Farmers' Union and myself have set up, and give you my promise of good will toward your company and the State Farmers' Union.

"In return you to have the books that have been kept in our headquarters here audited, and give me credit for all commissions and overwriting due me to be paid when collected. Also to pay me as collected all renewals that may be due me under contracts I held with you.

"Further, you are to pay me at this time for my good will and special services $1,000 in cash.

"You will also furnish me as soon as the books are audited a copy of all records in connection with the business I have turned over to you.

"You will also do all collecting of notes in which I have an interest in connection with the Farmers' Union, of course, providing the Farmers' Union continue their connections with your company.

"Yours truly,
"J. W. Middleton.

"We accept the above proposal
"Great American Life Insurance Company
    "By S. M. Babbitt, President."

Prior to the date of the first letter plaintiff had been, for more than a year, defendant's general agent in Oklahoma, defendant's home office being in Hutchinson, Kan. In the course of his employment considerable sums were advanced to him and subagents, for the repayment of which he was responsible. During the period he represented defendant it undertook a campaign to write insurance on members of the Oklahoma Farmers' Union, in conjunction with John A. Simpson, head of that organization, who, under a three-party contract with plaintiff and defendant, virtually became a subagent of plaintiff. This plan involved the taking of notes for premiums on policies, and the collection thereof by Simpson. In these notes plaintiff and Simpson each had an interest, as their commissions were to be paid out of the proceeds of each note as and when collected, and defendant had an interest to the extent of that part of the premium due it. The interests of the various parties in these premium notes, and their rights and responsibilities in connection therewith, were fixed and set out in three written contracts, one of which was the three-party contract above referred to, the other two being between plaintiff and defendant. These are the contracts specified in the letter of August 18th above set out, and the notes referred to in plaintiff's letter are notes taken under the plan above mentioned, which at the time of filing the suit amounted to approximately $26,000 or $28,000 face value. A receiver was appointed by the district court in accord-

ance with plaintiff's request. His efforts to collect the notes being unsuccessful, they were put up and sold upon request of both plaintiff and defendant, and bought at such sale by defendant.

After a trial consisting of several hearings, the trial court rendered a judgment in writing. In this judgment he held that plaintiff was not entitled to any part of renewal premiums under his contracts; that on the premium notes plaintiff was not entitled to commission until the notes were collected; that defendant and the receivers had used due diligence in their efforts to collect the notes, and that their failure to do so was due to economic conditions. He further found that on August 20, 1930, plaintiff owed defendant for cash advanced which plaintiff was obligated to pay, for which the notes above mentioned were held by defendant as collateral security. This indebtedness he adjudged canceled by the letters above set forth, holding that such letters constituted a mutual rescission or cancellation, which was conditional, or with reservations, on plaintiff's part in that plaintiff was to receive commissions on all cash collections of notes taken on business theretofore produced by him. The trial court further held that while plaintiff was not at that time, under the above specified contracts, entitled to anything from defendant except commissions payable when cash was collected on premiums, the letters set out herein constituted at least an accord and satisfaction between plaintiff and defendant, and that by the acceptance by defendant of the proposition contained in the letter of August 20, 1930, and the payment of $1,000 to plaintiff, defendant not only "passed J. W. Middleton out of the Oklahoma picture, but it passed him out of any indebtedness under his contracts with the company." He found plaintiff entitled to $1,708.02 on various collections by defendant which he held it should have paid to plaintiff, and rendered judgment therefor.

Defendant contends that the trial court erred in holding that the letters above quoted effected a cancellation of plaintiff's indebtedness to it for advances made, by waiver, estoppel, rescission, accord and satisfaction, or in any other manner which involved offer and acceptance, or voluntary action with knowledge. It further urges that the theory upon which plaintiff pitched his action, and the evidence adduced by him at the trial, as well as the statements of his attorney during the progress thereof, show conclusively that plaintiff did not place such a construction on the letters, but admitted such debt, and contended that it would be extinguished if proper credits had been given in his account.

Plaintiff asserts that the only issue involved is the interpretation of these two letters; that the court found that they constituted an accord and satisfaction, and that such finding is not against the clear weight of the evidence. In support of this statement he quotes from Gentry v. Fife (1916) 56 Okla. 1, 155 P. 246, defining accord and satisfaction, and Littlefield v. Box (1933) 163 Okla. 150, 21 P.2d 506, and other cases holding that in equity proceedings the judgment of a trial court will not be disturbed unless it is clearly against the weight of the evidence.

We are not impressed with this argument. The essential elements of an accord and satisfaction are a liability of defendant, an agreement of the amount to be paid, and the acceptance of such agreement in settlement of such liability. Swift & Co. v. Colvert (1927) 127 Okla. 80, 259 P. 844. We fail to find any of these essentials in the letters. The letter of August 18th terminated the contract between the parties, in accordance with the terms thereof, which gave either party such right. In it defendant admitted no liability to plaintiff, but stated that if the audit it proposed to have made showed a balance due plaintiff, it would be paid, and if such audit showed that plaintiff owed it, it would expect plaintiff to pay. The letter of August 20th, aside from the request for the payment of $1,000 by defendant for plaintiff's good will and for special services, deals wholly with the winding up of the

business produced during plaintiff's employment, in which he still had an interest. Nothing in either letter indicates that plaintiff had or claimed any liability of defendant to him, or possessed any right, which he proposed to surrender in consideration of the cancellation of his debts, unless such intent be found in the proposal to "pass out of the picture" made in the letter of August 20th. We cannot hold that by use of the term "pass out of the picture," defendant must have understood, or necessarily inferred therefrom, that plaintiff was proposing the cancellation of his debt, which, according to the uncontradicted evidence, amounted to a sum in excess of $20,000. We think that the construction placed on this letter by the trial court was directly in conflict with the holding of this court in Reeves & Co. v. Martin (1908) 20 Okla. 558, 94 P. 1058, that a contract will not be so construed as to work a forfeiture, or preclude a party from exercising a right under it, if by a reasonable construction such result may be avoided. And if plaintiff, by the use of that phrase, intended to include in his proposals the cancellation of his debt, the language used was so vague and uncertain as to call for the application of section 9478, O. S. 1931 (15 Okla. St. Ann. § 170), which provides that in case of uncertainty in a contract it is to be interpreted most strongly against the party who caused the uncertainty to exist. Thus interpreted, we do not believe it sufficient to constitute an offer of an accord and satisfaction which involved the cancellation of plaintiff's debt, and which, upon defendant's acceptance thereof, effected such cancellation.

Nor do we find in these letters any expression of an intent on the part of defendant to waive or relinquish its claim against plaintiff, or anything which would estop it from asserting such claim. In its letter of August 18th defendant clearly stated that if the audit showed a balance due it, it would expect the prompt payment thereof, and there is nothing in the letter of August 20th to justify the assumption that by its acceptance thereof defendant had receded from the position taken by it in the letter of August 18th.

Defendant's contention receives further support from the fact that plaintiff did not, in his pleadings or proof, assert or contend that his debt was canceled or waived by defendant in any manner, but proceeded upon the theory that his interest in the notes, if diligence had been used by defendant in their collection, would have been more than sufficient to extinguish his indebtedness to it and leave a balance due him.

There being no evidence in the record to support the judgment, except the two letters, which we hold are not susceptible of the construction placed upon them by the trial court, it necessarily follows that the judgment must be reversed.

Consideration of the record, which is voluminous, reveals that the contentions of the respective parties were thoroughly and completely presented to the trial court, and that each party, at the several hearings had, introduced all the evidence available to sustain their claims. In addition, the trial court, on his own motion, appointed an auditor to check the defendant's records, and he was examined orally by the court and by the attorneys for the respective parties as to his investigation and the result thereof. From the entire record it conclusively appears that plaintiff was indebted to defendant, for advances made, including advances to subagents for which he was responsible, in the sum of $20,829.18. It further appears that defendant failed to establish that it had credited plaintiff's account with his proportion of the net amount collected by the receiver on the notes. In these notes, under the contracts, plaintiff's interest was 45 per cent., John A. Simpson's 45 per cent., and defendant's 10 per cent. After deducting fees and expenses from the amount collected, the net balance was the amount of $815.82, which he paid over to defendant. Plaintiff was entitled to a credit on his account of 45 per cent. of this amount, or $367.11, leaving a net balance due from him to defendant of $20,462.07.

The judgment is reversed and the cause remanded, with directions to render judgment for defendant, on its counterclaim, for $20,462.07.

WELCH, V. C. J., and RILEY, GIBSON, and DAVISON, JJ., concur.