The CITY OF TULSA, Oklahoma, a municipal corporation, by and through the TULSA AIRPORT AUTHORITY, a Charter Agency thereof, and the Tulsa Airports Improvement Trust, Appellees, Cross–Appellants,

v.

AIR TULSA, INC., an Oklahoma corporation, and Jet Center, Inc., Appellants, Cross–Appellees.

No. 73238.

Supreme Court of Oklahoma.

Oct. 20, 1992.

Rehearing Denied May 18, 1993.

J. Richard Studenny, Randall S. Pickard, and J. Anthony Miller, J. Richard Studenny & Associates, Tulsa, for appellees, cross-appellants.

N. Franklyn Casey, Tulsa, for appellant, cross-appellee Air Tulsa, Inc.

Lawrence A.G. Johnson, Tulsa, for appellant, cross-appellee Jet Center Tulsa, Inc.

WATT, Justice.

## FACTS

The City of Tulsa owns the land and improvements making up Tulsa International Airport. The City also owns a smaller airport, Riverside Airport. Under the City's charter, the Tulsa Airport Authority maintains and operates the airports. The Tulsa Airports Improvement Trust is a public improvements trust created under state law. The Trust leases Tulsa International from the City and it is the vehicle used for the public financing of public improvements there.

An amendment to the City's charter created the Authority in 1958. Under the charter amendment, the Authority is to operate the airports as a financially independent utility of the City.

The City does not provide any funds for the Authority. The Authority receives federal funding for certain projects. Federal funding, however, is not available for basic airport operations and maintenance. The federal government, through the Federal Aviation Administration, requires that the Authority charge fees to airport users to make the airports as self sustaining as possible.

In late 1983, the Authority found that the operators of general aviation and military aircraft were not paying their fair share of the cost of maintaining and operating the airports. The Authority studied types of user fees charged by other airports of comparable size. Other airports generally charged two types of fees. One was a landing fee the airport charged to every airplane that used the runways and taxiways of the airport. The other was a fuel flow fee that sellers of fuel would collect from the aircraft owners to whom the sellers sold fuel and remit to the airport management. The Authority decided that a landing fee would be difficult to collect from owners who did not lease airport facilities. On the other hand, a fuel flow fee was simple and inexpensive to administer. The Authority, therefore, recommended to the City that it pass an ordinance authorizing a fuel flow fee.

The City passed an ordinance authorizing the Authority to collect fuel flow fees to become effective January 1, 1984. The Authority set the rate of the fuel flow fee at ten-cents per gallon. The ordinance required all fixed base operators at the Tulsa airports to collect the fuel flow fee and submit a monthly report accounting for all fuel dispensed and fees collected.[1] The fuel flow fee raises more than one-million dollars per year for the Authority.

## PROCEDURAL HISTORY

Air Tulsa claimed the fuel flow fee ordinance was unlawful and refused to either report its fuel sales or pay the fuel flow fee. Plaintiffs, the City, the Authority, and the Trust jointly sued Air Tulsa, and sought judgment requiring Air Tulsa to comply with the reporting and payment provisions of the ordinance. Plaintiffs also asked the trial court to declare that Air Tulsa's lease was forfeited because of Air Tulsa's refusal to account for fuel sales or pay the fuel flow fee. In a counterclaim, Air Tulsa claimed that the ordinance authorizing the fuel flow fee was unlawful on various legal theories. Air Tulsa later paid the fuel flow fees due under protest, but continued to contest the validity of the ordinance.

After suit was filed, Air Tulsa subleased its airport leasehold to Jet Center Tulsa, Inc., a company owned by the sons of Air Tulsa's owner. Jet Center also failed to pay the fee or report its sales, and plaintiffs joined Jet Center as an additional party defendant. Jet Center joined with Air Tulsa in its counterclaim contesting the validity of the ordinance.

The trial court upheld the validity of the fuel flow fee ordinance and ordered defendants to comply with its terms, but held that Air Tulsa had not forfeited its lease. Plaintiffs and defendants both appealed from the adverse portions of the trial court's judgment.

## ISSUES

I. Were defendants obligated to comply with the fuel flow ordinance?

    A. Was the fuel use fee, on one hand, a user fee collected from those who benefitted from particular services, or was it on the other hand, either a tax passed to defray general municipal expenses, or a license fee passed to regulate certain activity?

    B. Did the Authority have the power to set the rate of the fuel flow fee, and if so, was the Authority required to calculate the rate with mathematical precision?

    C. Was the City required to include a statement of purpose in the fuel flow ordinance?

    D. Does the fuel flow fee apply uniformly to the class that pays it?

II. Did Air Tulsa's decision to contest the fuel flow fee ordinance entitle plaintiffs to a forfeiture of Air Tulsa's lease?

## THE STANDARD OF REVIEW

If there is any competent evidence upon which to uphold the trial court's decision in a matter tried to the court, we must affirm. *Miller v. Guy H. James Const. Co.*, 653 P.2d 221 (Okla.App.1982). If "any proper legal theory exists" upon which to base affirming the judgment, "the judgment must stand." Id., 653 P.2d at 223. There is a presumption of validity of a municipal ordinance. *Garrett v. City of Oklahoma City*, 594 P.2d 764, 766 (Okla.1979).

A contract will not be construed so as to work a forfeiture, if by a reasonable construction forfeiture may be avoided. *Great American Life Ins. Co. v. Middleton*, 186 Okl. 1, 96 P.2d 38, 41 (1939).

## I.

Air Tulsa and Jet Center offer various theories in support of their claim that the fuel flow fee ordinance is unlawful. For

---

**1.** A fixed base operator, often called an FBO, is in the business of selling fuel, renting and maintaining airplanes, giving flying lessons, and providing other aircraft related services.

reasons we will discuss, we hold that the trial court correctly decided the ordinance was valid and enforceable.

## A.

Air Tulsa and Jet Center claim the ordinance imposed a tax or license charge, not a user fee. The significance of this argument is that, if the ordinance imposed a tax, it is invalid because it was not approved by a majority vote of the citizens of Tulsa. If the ordinance imposed a license fee, Air Tulsa and Jet Center claim that it was invalid because it raised far more revenue than the cost of regulating airport users. We reject both contentions.

The City had sold fuel at the airports. Shortly before it passed the fuel flow ordinance the City went out of the fuel business, apparently because of anti-trust concerns. Air Tulsa and Jet Center argue that the fuel flow ordinance was, therefore, a general revenue measure designed by the City to replace the revenues it lost from going out of the fuel business. This contention is unsound because the fuel flow fee is assessed only against users of the City's airport services for the benefit of the airports.

The City's charter provides that "The Tulsa Airport Authority shall have the power to operate any and all airports of the City as a separate utility." Where charges are made by and for the benefit of a municipal utility, the revenues raised are not taxes. *Oklahoma City Hotel & M.H.A., Inc. v. Oklahoma City*, 531 P.2d 316, 321 (Okla.1974); *Sharp v. Hall*, 198 Okl. 678, 181 P.2d 972 (1947). The revenues from fuel flow fees are raised by the Authority, as a separate city utility, to support airport operations. The fee is paid only by aircraft owners who do not already make other payments to support airport operations. For example, no fuel flow fee is charged on fuel used by airlines, because airlines pay landing fees. Thus, Airlines are exempted from paying the fuel flow fee.

The fuel flow fee is a user fee, not a tax. There was, therefore, no requirement that the City's citizens approve the fuel flow fee ordinance.

Air Tulsa and Jet Center's claim that the fuel flow fee is a license charge is also without merit. License fees are charged under a municipality's police power to defray the cost of regulating the class that pays the license charge. Such charges may not exceed the reasonable cost of regulating the class that pays the charge. *Red Slipper Club v. City of Oklahoma City*, 599 P.2d 406 (Okla.1979). Here, the City and the Authority have no interest in regulating aircraft fuel users. Instead, the Authority uses the revenues from the fuel flow fees to offset the cost of operating and maintaining the airports. Air Tulsa and Jet Center offered no evidence to support their argument that the City and the Authority sought to regulate aircraft fuel users.

## B.

Air Tulsa and Jet Center contend that the fuel flow fee ordinance is invalid because the City delegated to the Authority the discretion to set the amount of the fee. This contention is without merit.

The City's charter expressly charges the Authority with responsibility for maintaining and operating the airports. The charter states that the Authority may make contracts and such rules and regulations as are necessary to carry out its duties. The Municipal Airports Act, 3 O.S.1981 §§ 65.1 et seq., spells out the powers and duties of municipalities with respect to municipal airports. Section 65.7 of the Act provides that "Any authority vested by this Act in a municipality ... [dealing with the operation of a municipal airport] ... may be vested in [an]other municipal agency." Section 65.-5(a)(2) of the Act authorizes a municipality to "fix the charges, rentals or fees for the privileges or services it provides]...." The Act expressly authorizes cities to delegate their powers to their agents. The City properly delegated to the Authority the power to decide the amount of the fee.

Air Tulsa and Jet Center also complain that the Authority did not base the

fuel flow fee rate on the operational needs of the airports. The testimony is to the contrary, however. The Authority's chief financial officer testified in detail concerning the methods she used to track expenses and revenue needs of the Authority. Air Tulsa and Jet Center presented no evidence in support of their claim that the amount of the fee was unfair or unreasonable.

Air Tulsa and Jet Center would have us impose a duty of mathematical precision on the Authority. This we decline to do. The Authority has only one job: managing airports. We will not substitute our judgment for theirs in the area of their specialized knowledge. We adopt the reasoning of the United States District Court for the Eastern District of New York in *Transport Limousine v. Port Authority of New York*, 571 F.Supp. 576 (E.D.N.Y.1983). There, the court rejected the argument of a limousine service that an airport's user fees were unreasonable. The court said:

> ... Transport also argued that the fee charged is unreasonable because it is unrelated to the cost to the Port Authority for construction and maintenance of the facilities provided. We reject this cost-benefit analysis as requiring an improper inquiry into the internal affairs of a state agency; *it is not for the court to substitute its judgment for the specialized expertise of the Port Authority.* [Emphasis added.]

The fee the Authority set was fair and reasonable. Air Tulsa and Jet Center can ask for no more.

### C.

According to Air Tulsa and Jet Center the fuel flow ordinance is void because it contains no purpose clause. We disagree.

The Oklahoma Constitution, Article X, § 19 requires that "Every ... ordinance ... passed by any ... city ... *levying a tax* shall specify distinctly the purpose for which the tax is levied ..." [Emphasis added.] We have held that the City's fuel flow fee ordinance *did not* levy a tax. Thus Article X, § 19 is inapplicable.

### D.

■ Air Tulsa and Jet Center claim that the fuel flow ordinance is not "reasonable and uniform for the same class of privilege and service" and, therefore, violates 3 O.S. 1981 § 65.5(a)(3). According to Air Tulsa and Jet Center some aircraft using the airports' facilities might not buy gasoline. From this Air Tulsa and Jet Center argue that the fee does not apply uniformly. The record does not support this argument. The City and the Authority selected the fuel flow fee as the most fair and reasonable user fee because *most* users of airport facilities also buy fuel there. Air Tulsa and Jet Center introduced no evidence of any unreasonable application of the fuel user fee. The fuel user fee is fair and reasonable. The fact that *all* such users might not buy fuel does not make it otherwise.

### II.

■ Plaintiffs claim that they are entitled to a forfeiture of Air Tulsa's leases of airport properties. Plaintiffs' rights on this issue turn on the construction of the leases. There are two forms of lease but the pivotal language is essentially similar. Air Tulsa agrees to pay all "taxes assessments and levies." Nevertheless, the leases expressly allow Air Tulsa to "contest" the "payment of any such taxes, assessments or charges." One of the forms adds that "any contest thereof by Lessee shall not be deemed a breach of this obligation." Air Tulsa argues that its refusal to pay the fuel flow fee because it believed that the fuel flow fee ordinance was void was a "contest," which plaintiffs could not claim was a default under the terms of the leases. We agree.

■ The law abhors a forfeiture. Consequently, a contract will not be construed to work a forfeiture "if by reasonable construction such result may be avoided." *Great American Life Ins. Co. v. Middleton*, 186 Okl. 1, 96 P.2d 38, 41 (1939). Plaintiffs claim that Air Tulsa had only two choices when it chose not to pay the fuel flow fee: (1) pay the fee, or (2) have the leases forfeited. Such an interpretation

would render meaningless Air Tulsa's right to "contest" the fuel flow fee. We prefer to interpret the leases to mean that by disputing the fee, Air Tulsa was "contesting" it so that its non payment could not work a forfeiture.[2]

AFFIRMED.

HODGES, V.C.J., and LAVENDER, SIMMS and HARGRAVE, JJ., concur.

OPALA, C.J., and ALMA WILSON, KAUGER, and SUMMERS, JJ., concur in part, dissent in part.

**2.** The parties dealt at some length with another issue concerning whether the City was entitled to terminate Air Tulsa's leases for its non payment of the fuel flow fee. In 1984 Air Tulsa sued to enjoin the City from terminating its airport leases because of Air Tulsa's refusal to pay the fuel flow fee. The trial court in the 1984 case entered a temporary restraining order to that effect. On August 28, 1984 Franklyn Casey, attorney for Air Tulsa and J. Richard Studenny, attorney for the City, the Authority, and the Trust, entered into negotiations that Air Tulsa claims ended in a settlement agreement. Air Tulsa claims that, in return for its agreement to dismiss its suit and pay into escrow the fuel flow fees, attorney Studenny committed the City, the Authority, and the Trust, to an agreement to no longer seek forfeiture of Air Tulsa's leases. Air Tulsa did dismiss the 1984 case without prejudice. Attorney Studenny admitted telling attorney Casey he would recommend that his clients make such an agreement. According to attorney Studenny, however, his clients rejected his recommendation.

In 1988, at Air Tulsa's request, the trial court in the 1984 case signed a journal entry memorializing the trial court's understanding of the parties' dealings. In it the trial court found that the court recited that, on August 28, 1984, *counsel had agreed* and the court had ordered that the City of Tulsa could not use the failure of Air Tulsa to pay the fuel flow fee as a reason to terminate Air Tulsa's leases.

Air Tulsa claims that the later order was res judicata, and also that the City is bound by its agreement with Air Tulsa not to use the failure of Air Tulsa to pay the fuel flow fee as a reason to terminate its leases. Because we have found that Air Tulsa's leases allowed it to contest the fuel flow fee, we need not reach whether the 1984 case, and whether the parties' dealings in it, had res judicata effect or amounted to a settlement of the issue.