1998 OK 92

**CITY OF TULSA, Oklahoma, a home rule charter municipal corporation, Appellant,**

v.

**STATE of Oklahoma, ex rel. THE PUBLIC EMPLOYEES RELATIONS BOARD, and International Brotherhood of Teamsters, Tulsa Local No. 523, Appellees,**

No. 89422.

Supreme Court of Oklahoma.

Sept. 22, 1998.

David L. Pauling, City Attorney; William M. Northcutt and Martha Rupp Carter, Deputy City Attorneys; Ellen Hinchee, Assistant City Attorney; and Robert H. Garner, Airports Attorney, Tulsa, for Appellant.

W.A. Drew Edmondson, Attorney General of Oklahoma and James Robert Johnson, Assistant Attorney General, Oklahoma City, Oklahoma for Appellee, Public Employees Relations Board.

Thomas F. Birmingham of Birmingham, Morley, Weatherford & Priore, Tulsa, for Appellee, International Brotherhood of Teamsters, Tulsa Local No. 523.

LAVENDER, Justice.

¶ 1   This case presents the issue of whether appellee, the Oklahoma Public Employees Relations Board (Board) was correct in ruling airport safety officers (ASOs) employed by appellant, City of Tulsa (City) are "police officers" covered by the Oklahoma Fire and Police Arbitration Act (FPAA), 11 O.S.1991, § 51–101 et seq., as amended[1] and in ordering an election for the ASOs to choose appellee, International Brotherhood of Teamsters, Tulsa Local No. 523 (Union) as their bargaining agent for FPAA purposes.   We hold the Board erred as a matter of law.   Although the ASOs are certified pursuant to 70 O.S.Supp.1993, § 3311 as peace/police officers by the Council on Law Enforcement Education and Training (CLEET) and their duties, within the confines of City airport, include law enforcement functions—among other responsibilities—the definition of "police officer" for FPAA purposes requires such officers be duly appointed and sworn full-time officers of the regular police department of a municipality.   ASOs are not employees of City's regular police department, i.e. the Tulsa Police Department (TPD). They are City employees who work for, and are controlled and supervised by, personnel of the Tulsa Airport Authority.   Therefore,

we reverse its decision and the trial court judgment affirming it.

## PART I.  FACTS, PROCEDURAL HISTORY AND POSITIONS OF PARTIES.

¶ 2   Initially passed in 1971[2] the FPAA's policy is to give permanent members of any paid fire or police department in any municipality covered by the Act's provisions all the rights of labor, except the right to strike. § 51–101(B).   The strike prohibition is deemed necessary to protect public health, safety and welfare.   § 51–101(A) & (B).[3] Specifically, the FPAA grants municipal firefighters and police officers within its coverage the "right to bargain collectively with their municipal employer and to be represented by a bargaining agent in such collective bargaining with respect to wages, salaries, hours, rates of pay, grievances, working conditions and all other terms and conditions of employment." § 51–103(A).   The Board is authorized to promulgate rules to carry out the FPAA's provisions [11 O.S.Supp.1995, § 51–104(D)] and is the administrative agency that oversees and certifies the results of any election held for police or firefighters covered therein electing their bargaining representative.   § 51–103.   This case concerns the desire of City ASOs to elect Union as their FPAA bargaining agent and involves answering the question—are ASOs "police officers" within FPAA coverage?   Although numerous cases have been before this Court implicating one or more of the FPAA's provisions, we have never been presented with

---

**1.**  Citations to the Oklahoma Fire and Police Arbitration Act (FPAA), 11 O.S.1991, § 51–101 et seq., as amended, will be to the 1991 Oklahoma Statutes, unless otherwise indicated.

**2.**  11 O.S.1971, § 548.1 et seq.; *See Fraternal Order of Police v. Choctaw*, 1996 OK 78, 933 P.2d 261, 265; McCaffrey, *Public Employee Bargaining in Oklahoma*, 1 Okla.C.L.Rev. 35 (1976).

**3.**  The statutory strike prohibition should not be taken as a legislative recognition that without it, police officers, or other public municipal employees, have the right to strike or engage in work stoppages for the purpose of coercing their public employers into entering some type of collective bargaining contract sought by such public employees.   In such regard, the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., at § 152(2) (West 1998), specifically excludes states or their political subdivisions from the definition

of employer and, this Court has generally recognized that State public employees do not have the right to strike to coerce a governmental agency to enter into any particular labor contract. *International Brotherhood v. Grand River Dam Authority*, 1956 OK 24, 292 P.2d 1018, 1019 Second Syllabus (employees of Grand River Dam Authority, being employees of State engaged in public function, have no right to strike against the State; therefore, injunction of strike upheld). *International Brotherhood v. Grand River Dam Authority* is aligned with the historically understood principle that strikes/work stoppages by public employees have been universally prohibited, either statutorily or at common law. *Labor Law: Right of Public Employees to Strike or Engage in Work Stoppage*, 37 A.L.R.3d 1147,1149– 1153 (1971).   However, we need not decide here whether ASOs or any other public employees not covered by the FPAA do or do not have a protected right to strike.

this precise question.[4]

¶ 3 In May 1996 Union filed a certification petition with the Board claiming a substantial number of the ASOs desired Union's representation for purposes of collective bargaining and that it sought certification as their bargaining agent. The petition alleged the bargaining unit consisted of twenty (20) employees, referred to as "airport police officers". City opposed certification and a hearing on the matter was held before the Board in August 1996.

¶ 4 One issue raised by City in opposition to the petition—which it continues to raise on appeal—is the Board had no authority over Union's petition because ASOs do not fit the FPAA definition of "police officers". The definition, found at § 51–102(1), includes by reference the definition set out in the Oklahoma Police Pension and Retirement System Act (OPPRSA), 11 O.S.1991, § 50–101 et seq., as amended. Section 51–102(1) states in relevant part:

As used in this article, unless the context requires a different interpretation:

1. "[P]olice officers" shall mean the permanent paid members of any . . . police department in any municipality within the State of Oklahoma but shall not include the

chief of police and an administrative assistant. . . . "Police officers" as used herein shall be those persons as defined in Section 50–101 of this title.

11 O.S.Supp.1996, § 50–101(6) of the OPPRSA defines officer as follows:

"Officer" means any duly appointed and sworn full-time officer of the regular police department of a municipality whose duties are to preserve the public peace, protect life and property, prevent crime, serve warrants, enforce all laws and municipal ordinances of this state, and any political subdivision thereof, and who is authorized to bear arms in the execution of such duties;

¶ 5 City's position has two bases. One, ASOs do not fit within the plain and unambiguous definition contained in § 50–101(6), which requires employment by the regular police department of the municipality, because they are not TPD employees, but, instead, are City employees, who work for, and are controlled and supervised by, personnel of the Tulsa Airport Authority.[5] Two, ASOs fall outside the definition as only part of their duties are law enforcement related—hence, they are not "full-time officers".[6]

---

**4.** *See e.g. City of Anadarko v. Fraternal Order of Police, Lodge 118,* 1997 OK 14, 934 P.2d 328; *Fraternal Order of Police v. Choctaw, supra,* note 2; *City of Bethany v. Public Employees Relations Board,* 1995 OK 99, 904 P.2d 604; *City of Hugo v. State ex rel. Public Employees Relations Board,* 1994 OK 134, 886 P.2d 485; *Stone v. Johnson,* 1984 OK 76, 690 P.2d 459; *Oliver v. City of Tulsa,* 1982 OK 121, 654 P.2d 607; *Midwest City v. Cravens,* 1975 OK 22, 532 P.2d 829.

**5.** In *City of Tulsa By and Through Tulsa Airport Authority v. Air Tulsa, Inc.,* 1992 OK 146, 851 P.2d 519 we delineated the relationship of the City of Tulsa with the Tulsa Airport Authority. *Id.* at 520. There, we noted, City owns the land and improvements making up the Tulsa International Airport. *Id.* City also owns another, smaller airport—Riverside Airport. *Id.* The Authority, apparently by virtue of an amendment to City's charter, maintains and operates the two airports as a financially independent utility of the City. *Id.*

**6.** An alternative City argument, presented both below and on appeal, is that, even if the airport safety officers (ASOs) can be deemed "police officers" within the FPAA definition, the certification petition was faulty because it failed to allege thirty percent (30%) of **all** City police

officers wished to be represented by Union. Section 51–103(B)(1)(a) of the FPAA allows for initiation of the bargaining agent election process when a labor organization petition alleges "thirty percent (30%) of the . . . police officers in a municipality [ ] wish to be represented for collective bargaining by an exclusive employee representative. . . ." City asserts § 51–103(B)(1)(a) mandates there can be only **one exclusive** bargaining agent for all police officers in a municipality and because over seven hundred (700) police officers are employed by the Tulsa Police Department, the thirty percent (30%) requirement was not met by Union's petition because it only alleged a substantial number of the ASOs— said to number twenty (20)—desired Union's representation. A joint amicus curiae brief filed by the Oklahoma Municipal League, Inc. and the City of Oklahoma City, supports City's argument the FPAA allows for only one bargaining unit made up of all those City employees determined to be police officers under the FPAA and that this bargaining unit of all police officers must be represented by one exclusive bargaining agent. Both Union and the Board take issue with City's alternative argument, each asserting the FPAA allows for more than one bargaining unit of police officers within a municipality and the ASOs, making up a distinct/separate municipal

¶ 6 Union and the Board, although agreeing ASOs are not employees of the TPD, argue they fall within the "police officer" definition, asserting, in essence, the Legislature intended the FPAA to apply to all municipal employees who are authorized to and, in fact, do carry out the law enforcement duties spelled out in § 50–101(6) of the OPPRSA. They assert the ASOs meet this "functional" test because they are CLEET certified as peace/police officers, whose duties, within the confines of the City airport, include all those law enforcement functions set out in § 50–101(6) and they are authorized to and, in fact, do bear arms in the execution of those duties. Basically, their position is the ASOs—as a group—are a separate City police department from the TPD entitled to FPAA coverage. Both also essentially posit the phrase "duly appointed and sworn full-time officer **of the regular police department of a municipality**" (emphasis added) is an attempt by the Legislature to distinguish between "regular" police officers employed by a municipality and "reserve" municipal police officers, who when so employed by a municipality, also have authority to carry out all the law enforcement duties specified in § 50–101(6), so that "regular" officers are covered by the FPAA and "reserve" officers are not.[7]

¶ 7 City and Union stipulated to certain facts before the Board. In effect, the stipulations are: as of June 10, 1996 there were twenty-one (21) ASOs; the ASOs are employees of City; City is a municipal corporation organized and existing under the laws of the State of Oklahoma; ASOs' duties include responding to airport security checkpoints[8] and Federal Aviation Administration regulations require that airport employees whose duties include response to security checkpoints, must have the power of arrest and authority to carry a firearm; ASOs are CLEET certified; and ASOs are not employees of or sworn members of the TPD.

¶ 8 The bulk of the factual dispute at the hearing concerned the ASOs' duties-City trying to show only a minimal part of their duties involved law enforcement activities and Union attempting to prove most of the duties were law enforcement related. In such regard, competent evidence shows the ASO position was created in January 1994 by an Executive Order of City's Mayor. Essentially, the ASO position was intended to, and did, combine what formerly had been the separate positions of community service officer (CSO) and airport operation officer (AOO). CSOs were City employees working for the TPD as lower-level law enforcement officers than entry level TPD police officers. The CSOs performed mainly building and airport security. They were CLEET certified, but did not meet the educational requirements of the TPD for entry level police officer. AOOs, in contrast, were civilian employees working for the Tulsa Airport Authority in its Operations Division. The position involved many duties concerning airport safety, including airfield snow removal, collection of aircraft landing fees, perimeter inspections of airport outer fence, runway, taxiway and ramp inspections, monitoring weather conditions and response duties in aircraft emergencies.

¶ 9 The combined ASO position primarily performs the duties of the TPD CSO and the prior civilian AOO, i.e. both law enforcement and non-law enforcement related duties.

police department, are entitled to separately select their own bargaining agent for collective bargaining purposes, independently from members of the Tulsa Police Department, who, the uncontradicted evidence shows, have as a bargaining agent, the Fraternal Order of Police, Lodge 93. In view of our agreement with City that ASOs are not "police officers" within FPAA coverage, we need not and do not reach City's alternative position.

7. This position of Union and Board is consistent with a previous Board ruling in *In the Matter of: Fraternal Order of Police, Oklahoma City and Lake Rangers v. City of Oklahoma City, Oklahoma, Case No. 12268* (Oklahoma Public Employees Relations Board, May 5, 1987), where it earlier ruled Oklahoma City Lake Rangers employed by that municipality's Parks and Recreation Department, rather than the Oklahoma City Police Department, fit the FPAA and OPPRSA definition of "police officer".

8. "Security checkpoints" are those areas in the airport where persons pass through a metal detector and have their belongings scanned to ensure against weapon or explosive-device intrusion.

Law enforcement duties, within the jurisdictional area of the airport property[9], include: being first responder to crimes committed at the airport, vehicular and foot security patrols, traffic control, preservation of the public peace, protection of life and property, preventing crime, serving warrants, and enforcement of State and municipal laws. It is also undisputed the ASOs are authorized to and do bear arms in the execution of such duties. As we view the record, there is no question substantial record evidence exists to show a major part of an ASO's duties are law enforcement related. However, as will be seen, such fact is not dispositive of whether ASOs fall within FPAA coverage.

¶ 10 Additionally, the parties' stipulations, coupled with other undisputed evidence consistent with them, unequivocally show ASOs are not under the command and control of any TPD personnel, nor are they hired or disciplined by the TPD. They work for, and are ultimately controlled and supervised by, civilian employees working for the Tulsa Airport Authority.[10] We also note, legislative authorization for airport guards or police has existed since passage in 1947 of the Municipal Airports Act, 3 O.S.1991, § 65.1 et seq., as amended.[11] Finally, the evidence before the Board showed the TPD retained law enforcement jurisdiction and authority within the confines of City airport and that normally, even though an ASO would be the first responder to a crime committed within airport property, if an ongoing investigation was required, the matter would be referred to the TPD.

¶ 11 Based on the above evidence, the Board ruled in favor of Union and ordered an election. The trial court affirmed. City appealed, we retained jurisdiction and now reverse the Board's ruling and the trial court judgment affirming it.

**PART II. STANDARD OF REVIEW.**

■ ¶ 12 In that the correctness of an administrative agency order is before us, the Oklahoma Administrative Procedures Act (OAPA), 75 O.S.1991, § 250 et seq., as amended, governs our review. Under the OAPA a district court, the Court of Civil Appeals and this Court apply the same review standards to the administrative record. *State ex rel. Bd. of Trustees of Teachers' Retirement System v. Garrett,* 1993 OK CIV APP 29, 848 P.2d 1182, 1183–1184 fn. 8; *Seely v. Oklahoma Horse Racing Commission,* 1987 OK CIV APP 61, 743 P.2d 685, 689–690. Except in certain cases of alleged irregularities in procedure before the agency—a situation not applicable here—the review is confined to the record made before the administrative tribunal. 75 O.S.1991, § 321; *Lowry v. Board of Chiropractic Examiners,* 1981 OK 80, 631 P.2d 737. Generally, an administrative decision like that here should be affirmed if it is a valid order and the administrative proceedings are free from prejudicial error to the appealing party. 75 O.S.1991, § 322(3). An administrative order, however, is subject to reversal if an appealing party's substantial rights are prejudiced because the agency's decision is entered in excess of statutory authority or jurisdiction, or an order is entered based on an error of law. § 322(1)(b) & (d).

■ ¶ 13 Reversal is also appropriate if the agency's findings are clearly erroneous in view of the reliable, material, probative and substantial competent evidence in the record. § 322(1)(e). As to factual questions, neither a district court or this Court is entitled to substitute its judgment for that of the agency as to the weight of the evidence. *Id.; Board of Examiners of Veterinary Medicine v. Mohr,* 1971 OK 64, 485 P.2d 235, 240. With these standards in mind we turn to our review.

---

9. The record reflects Tulsa International Airport encompasses about four (4) square miles.

10. The only arguable exception to control by the Tulsa Airport Authority is that, apparently, if an ASO uses deadly force, an airport policy requires the ASO involved to appear before the Tulsa Police Department Deadly Force Review Board.

11. The Municipal Airports Acts, 3 O.S.1991, § 65.1 et seq., as amended, gives authorization to a municipality establishing or acquiring an airport or air navigation facility the right to appoint airport guards or police with full police powers. § 65.8(a).

## PART III. ASOS DO NOT FALL WITHIN THE UNAMBIGUOUS DEFINITION OF "POLICE OFFICER" AND IT HAS NOT BEEN SHOWN THEIR EXCLUSION FROM FPAA COVERAGE IS DEMONSTRABLY AT ODDS WITH THE LEGISLATIVE INTENT BEHIND THE FPAA.

¶ 14 The primary goal of statutory construction is to ascertain and follow the intention of the Legislature. *TRW/Reda Pump v. Brewington,* 1992 OK 31, 829 P.2d 15, 20; *Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Commission,* 1988 OK 117, 764 P.2d 172, 179. Generally, that intent is ascertained from the whole legislative act in light of its general purpose and object. *City of Bethany v. Public Employees Relations Board,* 1995 OK 99, 904 P.2d 604, 609. Further, the plain meaning of statutory language is conclusive except in the rare case in which literal construction will produce a result demonstrably at odds with the intention of the Legislature. *ABC Rentals of San Antonio, Inc. v. Commissioner of Internal Revenue,* 142 F.3d 1200, 1207 (10th Cir.1998). When a court finds a statute unambiguous, deferral to an administrative agency interpretation is not required. *Id.* Finally, as to matters of statutory construction, it should always be understood it is within the legislative body's prerogative to define words or phrases appearing in legislative enactments, and where a statute contains a definition, that definition is binding on the courts [*Oliver v. City of Tulsa,* 1982 OK 121, 654 P.2d 607, 611 quoting *Minnix v. State,* 1955 OK CR 37, 282 P.2d 772] and, of course, on administrative agencies.

¶ 15 The Legislature has given us a specific definition of the term "police officer" for FPAA coverage purposes. In our opinion, the OPPRSA definition of officer contains two plain and unambiguous general requirements before a law enforcement officer will fall within FPAA coverage. One, the officer must be a duly appointed and sworn full-time officer of the regular police department of a municipality. Two, the officer's duties must be to preserve the public peace, protect life and property, prevent crime, serve warrants, enforce all State laws and municipal ordinances, and they must be authorized to bear arms in the execution of such duties. Unquestionably, ASOs meet the second or functional part of § 50–101(6)'s definition. They do not, however, meet the first part.

¶ 16 In our view, the phrase "the regular police department of a municipality" is a plain and unambiguous reference to that department of municipal government that has been given the responsibility to carry out the normal law enforcement functions within the municipality. In this case, that department is the TPD. The ASOs are not officers employed by the TPD, but are a specialized group of municipal law enforcement personnel authorized to exist by virtue of the Municipal Airports Act of 1947 who are ultimately controlled and supervised by civilian employees of the Tulsa Airport Authority. There is simply no indication the Legislature intended to include such individuals within FPAA coverage.[12]

¶ 17 Union and the Board posit the phrase "the regular police department of a municipality" was intended by the Legislature to somehow distinguish between so-called regular municipal police officers and reserve municipal police officers. We disagree with this contention and have been presented with no persuasive argument that such was the intent of the Legislature. Reserve municipal police officers, by definition, are **part-time** municipal police officers with limits—depending on the population of the municipality—on the number of hours such officer can work in any calendar month. 11

12. At least two other courts faced with similar questions under collective bargaining statutes have recognized that not all employees with law enforcement responsibilities fit within a legislative definition of "police officer" or "policemen". See *County of Clark v. Clark County Park Ranger Employees Association,* 111 Nev. 1133, 901 P.2d 152 (1995) (park rangers employed by County Department of Parks and Recreation were not police officers within statutory definition because they were not employees of law enforcement agency); *City of San Antonio v. San Antonio Park Rangers Association,* 850 S.W.2d 189 (App.Tex. 1992) (park rangers employed by San Antonio Department of Parks and Recreation not within definition of "policemen" because not employed by city police department).

O.S.Supp.1997, § 34–101(B).[13] As such, they are excluded from the § 50–101(6) definition by virtue of the requirement that "full-time officer" status is mandated for FPAA coverage. It is, therefore, unwarranted to conclude a legislative intention to exclude them by use of the term regular, as Union and Board in essence argue.

 ¶ 18 We have further been provided with no viable argument that exclusion of ASOs from FPAA coverage is demonstrably at odds with the legislative intent behind that Act. The legislative purpose behind the FPAA, as noted, is to give permanent members of any paid fire or police department in any municipality all the rights of labor, except the right to strike. § 51–101(B). No showing has been made that exclusion of ASOs, i.e. a specialized group of law enforcement personnel working, not for a municipal police department, but for a civilian City department or agency with a limited geographical zone of responsibility, is somehow at odds with the legislative design. Without such a showing, we must apply the legislative definition as written because it is the duty of a court to give effect to legislative acts, not to amend, repeal or circumvent them. *Toxic Waste Impact Group, Inc. v. Leavitt*, 1988 OK 20, 755 P.2d 626, 630. This Court has no power to rewrite legislation simply because the legislative definition may not comport with our conception of prudent public policy. *Id.* If ASOs are to be included within the ambit of FPAA coverage, that inclusion must come from the legislative body, not this Court under the guise of statutory construction or interpretation.[14]

## PART IV. CONCLUSION.

¶ 19 The Board's decision that ASOs are within FPAA coverage failed to give effect to the applicable plain and unambiguous legisla-

tive definition. That definition mandates only those officers employed by the TPD fall within the FPAA ambit. Therefore, the Board erred and acted in excess of its authority when it ordered an election for the ASOs to choose Union as their bargaining agent under the FPAA.

¶ 20 The Board decision and the trial court judgment affirming it are **RE-VERSED.**

¶ 21 **ALL JUSTICES CONCUR.**

---

13. A reserve municipal police officer in a city with a population of less than two hundred thousand (200,000), may not serve more than one hundred ten (110) hours per month; in a city of two hundred thousand (200,000) or more, the reserve officer may serve no more than one hundred forty (140) hours per month. Prior to the 1997 amendment to the statute, a reserve officer was limited to serving twenty-five (25) hours per week, regardless of city population. 11 O.S. 1991, § 34–101(B).

14. Our decision should not be taken to denigrate or, in any way, downplay ASOs' duties and responsibilities. We have no doubt their law enforcement activities, and other duties, serve important public functions, including the protection of life and property within the confines of City's airport.