OSCN Found Document:STEPHENS vs STATE OF OKLAHOMA EX REL STATE BD OF OSTEOPATHIC EXAMINERS

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 STEPHENS vs STATE OF OKLAHOMA EX REL STATE BD OF OSTEOPATHIC EXAMINERS
2025 OK CIV APP 9
Case Number: 121740
Decided: 03/03/2025
Mandate Issued: 03/27/2025
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2025 OK CIV APP 9, __ P.3d __

 

DR. LINH STEPHENS, Plaintiff/Appellant,
vs.
STATE OF OKLAHOMA, ex rel. State Board of Osteopathic Examiners, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE ALETIA HAYNES TIMMONS, DISTRICT JUDGE

REVERSED

Linh Stephens, Tulsa, Oklahoma, Pro Se

Daniel J. Gamino, DANIEL J. GAMINO & ASSOCIATES, P.C., Oklahoma City, Oklahoma, for Defendant/Appellee

GREGORY C. BLACKWELL, JUDGE:

¶1 Dr. Linh Stephens appeals the trial court's decision affirming the Oklahoma Board of Osteopathic Examiners' order of public reprimand issued to Dr. Stephens for violation of the Oklahoma Osteopathic Medicine Act, 59 O.S. § 620et seq. Upon review, we reverse, holding that, on this record, Dr. Stephens could not have been reprimanded because she did not violate the portion of the act for which she was cited.

BACKGROUND

¶2 Dr. Stephens filed a complaint with the Board regarding Stephen Hale, alleging that Mr. Hale engaged in the unlicensed practice of medicine while serving as the guardian ad litem in her divorce case. As Mr. Hale is not a doctor of osteopathy subject to the Board's jurisdiction, Dr. Stephens's complaint ultimately went nowhere. However, unbeknownst to Dr. Stephens, in the course of its investigation the Board discovered several legal matters pending against Dr. Stephens that the Board wished to question her about.

¶3 On February 1, 2023, executive director for the Board, Michael Leake, emailed Dr. Stephens requesting a meeting to discuss her complaint against Mr. Hale and "a few other matters." OR 21. The email did not elaborate on what the other matters were. Dr. Stephens responded, offering to meet at the end of February. Mr. Leake requested that they meet sooner than the end of February. Dr. Stephens suggested meeting on February 2 at 2:00 p.m. and inquired about the meeting location. Richard Zimmer, Chief Investigator for the Board, (who had been copied on Mr. Leake's initial query) intervened, stating: "Dr. Stephens, thank you for agreeing to meet with us. We will come to your office on Tuesday February 7, 2023, at 2 p.m." Dr. Stephens responded with the following:

My clinic is for my patients and you guys are NOT my patients, and I expect to address my complaints against Stephen E. Hale for practicing medicine without a license at YOUR office ... Any disclosures and possible conflict of interests with the person I was complaining about? ... I have other priorities and to-dos, I don't want to have a meeting with just TWO lawyers and then having to repeat myself the same story to the rest of the medical board. I do NOT want you or anyone to speak about my complaints to the WHOLE medical board ....

Id. at 24. Dr. Stephens also inquired in additional emails as to why she would be meeting with lawyers, not doctors, 

¶4 Mr. Leake responded that he was the executive director of the Board that directly oversees individual's licenses to practice medicine, that he wanted to meet with her to discuss her prior arrest, and that she was more than welcome to bring counsel to the meeting. Id. at 25. Dr. Stephens then responded, stating among other things, the following:

I do want to have a meeting in front of the whole Medical Board (with doctors, and normal civilians as well) NEXT week. For emphasis, with everyone on the Medical Board ... My criminal defense lawyer and I do NOT agree to meet with you two biased lawyers outside of whole Medical Board, as you have NEVER denied IN WRITING your conflict of interest with Stephen E. Hale... Please coordinate the schedule with my lawyer, Shar, whose email is in the cc.

Id. at 27.

¶5 Without further notice, the Board then issued Dr. Stephens a citation, a complaint, and a notice for a hearing on the complaint. The hearing was set for March 16, 2023. The complaint alleged that Dr. Stephens had violated the Oklahoma Osteopathic Medicine Act due to her failure to allow the Board members to visit and inspect her office. Specifically, the complaint cited section 626(D) of the applicable act, which states:

Any licensee or applicant for license subject to the provisions of the Oklahoma Osteopathic Medicine Act shall be deemed to have given consent to any duly authorized employee or agent of the Board to access, enter, or inspect the records, either on-site or at the Board office, or facilities of such licensee or applicant subject to the Oklahoma Osteopathic Medicine Act. Refusal to allow such access, entry, or inspection may constitute grounds for the denial, nonrenewal, suspension, or revocation of a license.

OR, 4 (quoting 59 O.S. § 626

¶6 At the hearing, the Board heard from Dr. Stephens, Mr. Leake, Mr. Zimmer, counsel for the Board, and counsel for Dr. Stephens. The Board found against Dr. Stephens but elected to issue a public reprimand in lieu of more draconian action. 75 O.S. § 322

STANDARD OF REVIEW

¶7 In that the correctness of an administrative agency order is before us, the Oklahoma Administrative Procedures Act (OAPA), 75 O.S. § 250et seq., governs our review. City of Tulsa v. State ex rel. Pub. Employees Realtions Bd., 1998 OK 92967 P.2d 1214Id. (citing 75 O.S. § 322Id. (citing 75 O.S. § 322

ANALYSIS

¶8 As relevant here, Dr. Stephens argues that the court erred in misapplying and misinterpreting 59 O.S. § 626

Any licensee or applicant for license subject to the provisions of the Oklahoma Osteopathic Medicine Act shall be deemed to have given consent to any duly authorized employee or agent of the Board to access, enter, or inspect the records, either on-site or at the Board office, or facilities of such licensee or applicant subject to the Oklahoma Osteopathic Medicine Act. Refusal to allow such access, entry, or inspection may constitute grounds for the denial, nonrenewal, suspension, or revocation of a license. Upon refusal of such access, entry, or inspection, pursuant to this section, the Board or a duly authorized representative may make application for and obtain a search warrant from the district court where the facility or records are located to allow such access, entry, or inspection.

Id. Dr. Stephens argues that the Board erred in publicly reprimanding her because the Board did not present any evidence of Dr. Stephens's alleged violation of this statute. She argues that the Board never requested access to her records or facilities as provided for in this statute, and that she cannot, therefore, have denied the same. Upon review, we agree.

¶9 Read in the light most favorable to the Board, the above statute allows the Board access to both Dr. Stephens's records and facilities for the purpose of accessing, inspecting, or entering those same records or facilities. Because in exchange for her license to practice medicine Dr. Stephens has been deemed to consent to such access, the refusal to allow such access to either her records or facilities would be a violation of the statute. Thus, the relevant question here is whether Dr. Stephens's responses to the Board constituted a refusal to access, enter, or inspect either her records or her facilities, or both.

¶10 In responding to Dr. Stephens's inquiry about the meeting's proposed location, Mr. Zimmer responded: "[W]e will come to your office." OR 23. Notably, Mr. Zimmer did not state they needed to come to her office to access her records or inspect facilities, or reference section 626(D) in any way. Rather, in the context of these emails, we find it clear that the Board was merely requesting to meet with Dr. Stephens. The statute notably does not require Dr. Stephens to have a meeting with an agent of the Board at her office or any other place, but simply requires Dr. Stephens to allow access, entry, and inspection of her records and facilities. Further, Dr. Stephens's response to Mr. Zimmer was that "her clinic was for her patients" and that she wanted to address her complaints against Mr. Hale at the Board's office. OR 24. She also stated that she did not want to have a meeting with "just two lawyers." Id. Mr. Leake responded, stating that he is the executive director of the Board, and he wanted to "discuss" her arrest from the year prior. Id. at 25. Dr. Stephens then replied that she wanted to have a meeting in front of the entire medical Board the following week and that she and her lawyer did not agree to meet with Mr. Zimmer or Mr. Leake outside of the Board. Id. at 27.

¶11 Upon review of the correspondence between Dr. Stephens, Mr. Zimmer, and Mr. Leake we find that there was never a request to access or enter Dr. Stephens's facilities or inspect any of her records. Instead, the Board's agents indicated that they wanted to meet with her at her office and discuss her arrest. Dr. Stephens is not required to host a meeting at her office or to have any sort of discussion with the Board should she not wish to do so. While she is required to allow entry to her facilities to inspect records or the facilities should such a request be made, we decline to construe the Board's request here as one made under the authority of 59 O.S. § 626

¶12 Dr. Stephens's position is further supported by the testimony of the Board's agents at the administrative hearing. Mr. Zimmer testified that the Board simply wanted to talk to her and visit her at her office. OR 115. Dr. Stephens's counsel then asked why, if they were only wanting a meeting with Dr. Stephens to discuss her arrest, they could not have offered to meet her at a public place. Id. at 116. Mr. Zimmer replied, "That's what we chose to do." Id. He then stated that their intent was to "sit down and meet with her about this complaint against Mr. Hale." Id. Further, Mr. Leake testified that he and Mr. Zimmer were not refused physical access to the building. Id. at 199. Mr. Leake later added that Dr. Stephens was cited for violating 59 O.S. § 626Id. at 124-25. Dr. Stephen's counsel even clarified asking Mr. Leake, "you are saying that her refusing to meet you is a violation of Title 59 § 626(D), period?" Id. at 127. Mr. Leake responded, "correct." Id.

¶13 We disagree with the Board's interpretation of 59 O.S. § 62659 O.S. § 626

¶14 In reviewing Dr. Stephens's hearing before the trial court, we find that the court made erroneous findings of both fact and law. As to the facts, the trial court erroneously found that Dr. Stephens originally agreed to meet with the Board in her office prior to refusal. Tr. (Sept. 22, 2023), 18 (finding that Dr. Stephens "agreed to meet [Mr. Leake and Mr. Zimmer] in her office at 2:00 o'clock on February 7th."). However, upon review of the record, we find that Dr. Stephens made no such agreement. Rather, at all times, she made it clear that she did not desire to hold the suggested meeting at her office.

¶15 More to the point, and as to the law, the trial court stated that the "statute says they can come at anytime ... to meet with her ...." Tr. (Sept. 22, 2023), 14. However, as outlined above, we disagree with this interpretation of the statute. Section 626(D) does not permit the Board to require its licensees to hold their offices open for any meeting desired by the Board. Rather, the statute empowers the Board to "to access, enter, or inspect the records, either on-site or at the Board office, or facilities of such licensee ...." While we interpret this language broadly--to allow the Board to send it agents to either (1) access and inspect records of the licensee and (2) to access, enter, and inspect the facilities of the licensee--we cannot interpret it to allow unfettered access, for any purpose desired by the Board. If done under the auspices of § 626(D), the entry to the facilities must be for one of the statute's designated purposes, such as inspection of records or facilities, or both. 

¶16 REVERSED.

WISEMAN, P.J., and FISCHER, J., concur.

March 3, 2025

FOOTNOTES

59 O.S. § 637.1

See Tr. (September 22, 2023), 15-16, 21-22. That portion of the statute allows the Board to hire a CLEET-certified peace officer to "investigate and inspect the nonfinancial business records of all persons licensed pursuant to the Oklahoma Osteopathic Medicine Act in order to determine whether or not licensees are in compliance with the Oklahoma Osteopathic Medicine Act and the Uniform Controlled Dangerous Substances Act or any other law ...." 59 O.S. § 626(C)(3) (emphasis supplied). We find that this provision, which was not cited in the complaint, has no relevance here. It empowers the Board to hire an investigator and permits the Board to delegate broad investigatory powers to that investigator. It does not in any way dictate the degree to which an osteopath must cooperate with any particular investigation. While the lack of cooperation may have consequences not presented here, and subsection (D) empowers the Board to obtain search warrants for records to which the Board is entitled should they not be turned over voluntarily, nothing in section 626(C)(3) justifies the Board's letter of reprimand under review.